## MALONNY v. MAHAR.

The oath required to be taken by a collector of taxes (sec. 9, ch. 4, tit. 5, part 1, R. S.) on returning lands on which the taxes have not been paid, may be administered by the deputy county treasurer, in the absence of the treasurer from his office.

CASE reserved from Washtenaw Circuit Court.

*Hawkins*, for plaintiff.

*Kingsley* and *Morgan*, for defendant.

*By the court*, WHIPPLE, J. This cause comes before the court upon a motion made by the defendant for a new trial, and which was reserv-

Malonny *v.* Mahar.

ed for our advice by the presiding judge of the circuit court of Washtenaw county.

The determination of the question, upon which the motion is founded, must depend upon the true construction of sec. 9, chap. 4, tit. 5, part 1, Rev. Stat. That section is in these words: "If any of the taxes mentioned in the tax list annexed to his warrant shall remain unpaid, and the collector shall not be able to collect the same, he shall deliver to the county treasurer an account of the taxes so remaining due; *and upon making oath before the county treasurer, or in case of his absence, before any justice of the peace,* that the sums mentioned in such account remain unpaid, and that he has not, upon diligent inquiry," &c. By the provisions of sec. 22, chap. 3, tit. 3, part 1, Rev. Stat., it is provided "that the county treasurer may appoint a deputy, who, in the absence of the treasurer from his office, or in case of a vacancy in said office, *may perform all the duties of the treasurer.*" The conditions of the bond required to be given by the treasurer, make him responsible for the acts of the deputy. The case shows that the oath was administered by the deputy, in the absence of the treasurer from his office, and that the jurat is in the following words: " Sworn and subscribed before me this 8th day of February, A. D. 1839.

VOLNEY CHAPIN, treasurer of Washtenaw county,

By D. T. McCOLLUM, deputy."

It is to be kept in mind, in giving a construction to these provisions of the Rev. Stat., that they are embodied in one act, and must be construed with reference to that fact. If the provision last quoted stood alone, and disconnected from sec. 9, of chap. 4, no doubt could arise in respect to its construction. It contemplates that the deputy, in the absence of the treasurer from his office, may perform *all the duties* of the treasurer. The case shows that the treasurer was absent from his office when the oath was administered by the deputy. The authority, then, to administer the oath, cannot be doubted, unless the general powers conferred upon the deputy are restricted by sec. 9 of chap. 4, which provides that the oath may be administered by the treasurer, or in his absence by a justice of the peace. Does the language of this section conflict with that which confers the general authority upon the deputy to act in behalf of his principal? In the construction of statutes, it is a fundamental rule, that courts are to search for and give ef-

Malonny *v.* Mahar.

fect to the intention of the legislature; and that in giving a construction to an act, courts should strive to give full force and effect to all its parts. A *strict* construction of the 9th sec. of chap. 4 would seem to restrict the general powers conferred upon the deputy by the provisions of sec. 22, chap. 3. But was such the intention of the legislature? After a careful examination of those provisions of the Rev. Statutes to which we are to look in arriving at a conclusion as to what that intention was, I am led to the belief that no restriction was intended to be imposed upon the general powers so clearly conferred upon the deputy treasurer. It was contended in argument, that, as the legislature had provided in express terms that the oath should be administered by the treasurer, and in his absence by a justice of the peace, it followed, *ex vi termini*, that none other than the treasurer or a justice could administer the oath. This argument would be conclusive if the section which requires the oath to be administered by the treasurer or a justice, was to be construed irrespective of other provisions which are *in pari materia*.

But in the interpretation of statutes, we are to take into view all such parts as relate to the same subject. Applying this rule to the various provisions relating to the question before us, I am unable to perceive why they may not be easily reconciled. It does not necessarily follow, that any restriction is or was intended to be imposed upon the general powers of the deputy, because a duty devolved upon his principal *might* be performed by a justice of the peace. The strict construction contended for by the plaintiff would have the effect to limit the meaning of the section which defines the general powers of the deputy. It is admitted that this court must so limit the general language used in sec. 22, unless we are enabled, by a reasonable and common sense construction, to give full force and effect to the two sections which it is said conflict with each other. But is there anything which authorizes a justice to administer the oath required by sec. 9, inconsistent with the provisions of sec. 22? I am unable to perceive that the authority to administer the oath by the justice, clashes with the authority previously given to the deputy: by one provision of the act, general powers were conferred upon the deputy, which would necessarily include that of administering the oath required to be taken by collectors upon making their returns of unpaid taxes: by another provision, the like power is conferred upon justices of the peace. In

Malonny *v.* Mahar.

adopting sec. 9, it would have been unnecessary, in so many words, to confer upon deputies the authority to administer the oath, inasmuch as, by a previous section, that authority is expressly granted. By this exposition of the two provisions, full force and effect is given to each, without violating any rule of construction with which I am familiar. I have no doubt that this view of the statute fulfils the intention of the legislature, without doing the least violence to the language by which that intention has been manifested. It is hardly credible that an authority like that contemplated by sec. 9, should constitute an exception to the general authority with which the deputy has been vested by a previous section. The form of the oath is prescribed in the section, so that the duty devolving upon the person by whom it is administered is merely ministerial. No reason was or can be given why the deputy should be prohibited from performing a duty so simple, and yet be permitted to perform other duties much more complicated, and exacting the exercise of great care and discretion.

The administration of the oath, then, by the deputy, is in law the administration of the oath by his principal ; for the act of the deputy, within the scope of his powers, is the act of the principal, the deputy being the mere agent of his principal. So that the requisitions of sec. 9 are fully satisfied if the deputy performs the duty it enjoins upon the treasurer.

The construction I have given to the statute is the construction which it has received by the executive department of the state government, and by the county treasurers, ever since the R. S. went into operation, and its correctness has never, up to the present time, been questioned. This construction has become universal, and we are not disposed to disturb it at this time, without stronger reasons than were urged by counsel upon the argument. It has become, to some extent, a rule of property. Many titles depend upon it, and in this view it is important to sustain the acts of the deputy, unless his authority to do the act complained of is manifestly against law. This I have endeavoured to show is not the case.

In conclusion, we think that the deputy treasurer had, by a fair and reasonable construction of the statute, the authority to administer the oath required by sec. 9 ; and that this construction having been uniformly given to the statute by the state and county authorities, we have the

right, even if the statute were doubtful, to invoke the aid of the legal maxim, *communis error facit jus*, and sustain his authority.

It must be certified to the circuit court of Washtanaw county, that it is the opinion of this court that a new trial be granted.

*Certified accordingly.*