MAGRETA *v.* AMBASSADOR STEEL COMPANY.

ON REHEARING.
OPINION OF THE COURT.

1. COURTS—INTERPRETATION OF STATUTES—CORRECTION.

    A court which discovers it has made a wrong interpretation of a statute is obligated to correct the error.

2. WORKMEN'S COMPENSATION—MAXIMUM AND MINIMUM LIMITATION —SCHEDULE LOSSES.

    Maximum dollar limitations, determined by number of claimant's dependents, on compensation to be paid to partially incapacitated employees are applicable to benefits payable to an employee who suffers a "schedule loss", the loss of a particular anatomical member (CLS 1961, §§ 412.9, 412.10).

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

    The Supreme Court generally should not consider a question on appeal that was neither raised nor considered an issue below.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts § 214; 50 Am Jur, Statutes §§ 219, 221.
[2] 58 Am Jur, Workmen's Compensation §§ 287, 307.
[3] 5 Am Jur 2d, Appeal and Error § 545.
[4] 50 Am Jur, Statutes §§ 223, 318, 325.
[5] 50 Am Jur, Statutes §§ 326, 337.
[6] 50 Am Jur, Statutes § 228.
[7] 5 Am Jur 2d, Appeal and Error § 1009; 58 Am Jur, Workmen's Compensation § 543.
[8] 50 Am Jur, Statutes §§ 221, 321.
[9] 58 Am Jur, Workmen's Compensation §§ 287, 307.
[10] 42 Am Jur, Public Administrative Law § 82.
[11] 58 Am Jur, Workmen's Compensation §§ 281–285.
[12] 58 Am Jur, Workmen's Compensation §§ 282, 287, 288.

4. COURTS—CONSTRUCTION OF STATUTES—ADMINISTRATIVE INTERPRE-
TATION.

   A court construing a statute must determine legislative intent,
   and in so doing it should consider the construction given the
   statute by those charged with its execution, which the court
   ought not overrule without cogent reasons.

5. SAME—CONSTRUCTION OF STATUTE—LEGISLATIVE ACQUIESCENCE.

   The silence of the legislature for many years after the Supreme
   Court's interpretation of the legislature's intent in a statute as
   expressed in an opinion must be construed as consent to the
   accuracy of the interpretation.

6. WORKMEN'S COMPENSATION—CONSTRUCTION OF STATUTE—PARTIAL
INCAPACITY.

   Judicial interpretation of sections of workmen's compensation
   act by Supreme Court, which removed ceiling on benefits for
   partial incapacity and introduced new concept of 2/3 of
   wages claimant had been making as measure of compensa-
   tion *held*, improper, as the act imposed a maximum and min-
   imum upon compensation benefits and if a change is to be
   made it must be done by the legislature (CLS 1961, §§ 412.9,
   412.10).

7. COSTS—WORKMEN'S COMPENSATION—CONSTRUCTION OF STATUTES.

   No costs are allowed on appeal to either the Court of Appeals or
   the Supreme Court and no costs on rehearing are allowed where
   partial reversal of workmen's compensation appeal board is
   changed to complete affirmance on rehearing in Supreme Court
   where the case involves the interpretation of a statute.

SEPARATE OPINION.

BLACK, J.

8. STATUTES—CONSTRUCTION—LONG-STANDING ERROR.

   *A long-continued construction given a long-standing statute by*
   *executive officers charged with its execution and administration,*
   *without being questioned in the courts, is entitled to most*
   *respectful consideration and will not be overruled without*
   *cogent reasons, even if erroneous in its inception (CLS 1961,*
   *§§ 412.9; 412.10).*

DISSENTING OPINION.

T. M. KAVANAGH and SOURIS, JJ.

9. WORKMEN'S COMPENSATION—MAXIMUM AND MINIMUM BENEFIT LIMITATIONS.

*The scheme of compensation benefits devised by the legislature in the workmen's compensation act for specific losses of anatomical members is not subject to maximum and minimum limitations based on number of dependents (CLS 1961, §§ 412.9, 412.10).*

10. STATUTES—ADMINISTRATIVE CONSTRUCTION.

*Administrative construction of a statute should be overruled when a court concludes that legislative language compels a contrary construction.*

11. WORKMEN'S COMPENSATION—MAXIMUM AND MINIMUM LIMITATIONS OF COMPENSATION.

*Minimum limitations of workmen's compensation apply only to cases of total incapacity for work, where the injured worker theoretically has no wage-earning capacity; maximum limitations of workmen's compensation apply to both partial and total incapacity for work (CLS 1961, §§ 412.9, 412.10).*

12. SAME—SPECIFIC ANATOMICAL LOSSES.

*Anatomical losses may or may not disable a person from earning wages, and the workmen's compensation statute has no minimum benefit limitation, only a maximum limitation of 2/3 of claimant's average weekly wage for a specific anatomical loss, which may or may not disable claimant from earning wages (CLS 1961, §§ 412.9, 412.10).*

Appeal from Court of Appeals, Division 2; Quinn, P. J., and T. G. Kavanagh and McGregor, JJ., ordering denial of leave to appeal from an order of the Workmen's Compensation Appeal Board. Submitted October 6, 1966. (Calendar No. 8, Docket No. 51,371.) Decided March 7, 1967. Submitted on rehearing January 11, 1968. (Calendar No. 14, Docket No. 51,371.) Decided on rehearing May 6, 1968.

Francis A. Magreta presented his claim for workmen's compensation benefits against Ambassador Steel Company, a Michigan corporation, and Gen-

eral Accident Assurance Corporation, a foreign corporation, for injuries to 1 foot and for loss of a leg. Benefits modified by appeal board. Leave to appeal denied by Court of Appeals. The Supreme Court affirmed in part and reversed in part. On rehearing, original opinion modified and order of Court of Appeals denying leave to appeal from Workmen's Compensation Appeal Board reinstated.

*Kelman, Loria, Downing & Schneider,* for plaintiff.

*LeVassuer, Werner, Mitseff & Brown,* for defendants.

*Amici Curiae:*

Michigan Self-Insurers' Association, Inc., by *Stanley E. Beattie* and *Buell A. Doelle.*

The Employers' Group Insurance Companies and Firemen's Fund American Insurance Companies, by *John E. Miley (Vincent F. McAuliffe,* of counsel).

International Union, UAW, by *Steven I. Schlossberg, John A. Fillion, Jordan Rossen,* and *Bernard F. Ashe.*

Aetna Casualty & Surety Company, American Insurance Association, American Mutual Insurance Alliance, Auto-Owners Insurance Company, Citizens Mutual Automobile Insurance Company, Employers Mutual of Wausau, Liberty Mutual Insurance Company, Michigan State Accident Fund, and the Travelers Insurance Companies, by *Charles H. King.*

On Rehearing

O'Hara, J. Our decision in this case upon its original presentation is reported in 378 Mich 689. It was unanimous. The facts are therein set forth in complete detail. We shall not restate them herein.

The case is one of statutory interpretation. The statute involved is the workmen's compensation act.* The specific sections are part 2, §§ 9 and 10. They deal with the minimum and maximum benefits limitations payable for total incapacity under part 2, § 9, and the maximum limitations upon benefits for partial incapacity under part 2, § 10.

Our decision admittedly changed the uniform construction accorded the sections both by the workmen's compensation appeal board and by this Court over the years since its enactment.

We preface our decision here with the recognition that there is no vested right in the continuation of judicial error. If we have been wrong in our interpretation, we are not only free to, but obligated to, correct that error.

The effect of our original decision is well phrased in one of the many *amicus* briefs filed in response to our grant of permission to any party of interest in the subject matter who sought to do so. It is phrased as the statement of issue before us on this rehearing:

"The issue before the Court is whether the maximum dollar limitations on the compensation to be paid to partially incapacitated employees are applicable to the benefits payable to employees who suffer what are called 'schedule losses.' "

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1960 Rev and Stat Ann 1965 Cum Supp § 17.141 *et seq.*]).

Schedule losses, as above used, are synonymous with specific loss benefits payable for loss or functional destruction of a particular anatomical member, *e. g.*, a hand, foot, or leg.

We held in our prior decision that such dollar limitations were not so applicable. This is to say that the historic "not less than, nor more than *x* dollars" in the computation of benefit payments in schedule losses did not obtain. The pragmatic result was to remove the ceiling on weekly benefits, and to set claimant's award, and any award to those similarly situated, at 2/3 of his weekly earnings, whatever the amount thereof. We further held that this amount was to be neither diminished nor enlarged by reason of the number of his dependents.

We are impelled to reverse our previous position. The prior interpretation accorded to the 2 involved sections and their relationship to each other is what may properly be called a grammatical analytical approach. It can be justified in a purist sense of according to the words, clause, antecedent, and similar terms, their grammatical definitions. Our duty extends beyond this method but does not exclude it completely.

In statutory construction we are bound to determine legislative intent. In the exercise of that duty we are obligated to utilize all the tools of the historic judicial method. We feel we overemphasized the grammatical analysis to the prejudice of other well-recognized and long-established methods. In addition, we underevaluated a wisely self-imposed limitation of the appellate process.

We discuss first our departure from the usual appellate process. In our original decision, we said at p 701:

"Both parties to this appeal, it should be noted, proceed on the assumption that the specific loss benefits specified in the schedule in part 2, § 10 are subject to the maximum and minimum benefit limitations."

Of course they did, and small wonder, for that "assumption" had been part of the settled case law and administrative application of the statute since its inception. Simply put, we decided this case upon an issue that was not only never raised below, it was not even considered an issue before the referee, the appeal board, or the Court of Appeals. We hardly need cite authority for the proposition that such an issue is not generally considered by any appellate court, and particularly by a court of ultimate review. We mention *Young* v. *Morrall* (1960), 359 Mich 180, 187, as expressive of the general principle.

The second basis which convinces us we did not properly apply the recognized tests of statutory construction was our failure to accord sufficient weight to the invariant interpretation accorded the statute by the commission legislatively delegated to administer it. Admittedly, our original decision gave to the statute an interpretation in conflict with that accorded it by the commission over the years.

In *Boyer-Campbell Co.* v. *Fry* (1935), 271 Mich 282, 296, we quoted with approval the following language of the United States Supreme Court in *United States* v. *Moore* (1877), 95 US 760, 763, (24 L ed 588, 589):

"'The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.'"

Third, we must recognize that we did not consider the doctrine of legislative acquiescence to have

any bearing on the issue. We would not be understood to hold that standing alone this principle is controlling, yet we must assume that the legislature was aware of the prior interpretation of the act. Session after session the act has been amended in some particular, but no specific amendment of the language here under consideration was made. In support of this basic principle we refer to the language in *In re Clayton Estate* (1955), 343 Mich 101, 106, 107:

"The silence of the legislature since 1922 to this Court's interpretation of its intent as expressed in the *Fish Case* [*In re Fish's Estate,* 219 Mich 369], can only be construed as consent to the accuracy of that interpretation."

The same may be said to be applicable to the question here presented.

Last, we mention that the concept of a maximum and minimum upon compensation benefits has been a settled principle in our act since its inception. When we, by our prior holding, removed any ceiling on benefits, we drastically changed its basic approach to the amount of benefits to be allowed. We introduced newly into the act a concept of 2/3 of whatever wages a claimant had been making as his measure of compensation, as against the concept of a maximum imposed by the act itself. On due reflection, we are constrained to hold that if such an innovation in a statute is to be made it is properly to be made by the legislature.

For the reasons herein detailed, we reverse ourselves as expressed in our original opinion in *Magreta* v. *Ambassador Steel Co.,* 378 Mich 689.

Nothing set forth above shall be construed as affecting, as precedent or otherwise, any portion of the Court's original opinion save that which is addressed to the restricted question framed by our

order granting rehearing. That order, entered July 21, 1967, confined rehearing to question whether the maximum rates provided in part 2, § 9, of the workmen's compensation act apply to specific loss cases enumerated in section 10 where the specific loss is less than total and permanent.

The result now determined is that the order of the Court of Appeals, denying leave to review the appeal board's order, is reinstated. No costs on appeal to either court and no costs on rehearing are allowed, this being a case of statutory interpretation.

DETHMERS, C. J., and KELLY, BLACK, ADAMS, and BRENNAN, JJ., concurred with O'HARA, J.

BLACK, J. (concurring). I agree with Justice O'HARA. Along with my endorsement of his opinion, I believe it permissible that further reference be made to the degree of respect we ordinary mortals of the 1960's "Drest in a little brief authority"[1], owe to the timelessly valuable precepts which appeared early in our reports. Three of us—still here—pursued that thought pertinently when *People* v. *Holbrook* (1964), 373 Mich 94, 99 was handed down:

"We have in this State a rule of statutory construction which—for this case—will bear repeating. It is that a long continued construction, given a long-standing statute by executive officers charged with its execution and administration (no one meanwhile having questioned such construction so far as our reports disclose), is entitled to most respectful consideration and will not be overruled without cogent reasons."

On the occasion of *Holbrook* this Court had before it for guidance, not only a unanimous decision writ-

---

[1] Shakespeare, Measure For Measure, act 2, scene 2.

ten by Mr. Justice Cooley (*Johnson* v. *Ballou*
[1874], 28 Mich 379), but also a long since mature
opinion of the attorney general,[2] both of which
amply supported the principle quoted above. The
period of continuously unchallenged administrative
interpretation and application involved in this case
being at least as long as that considered in *Holbrook,*
I would adhere to the even more firm convictions
which this Court recorded in *Malonny* v. *Mahar*
(1847), 1 Mich 26, 29, 30:

"The construction I have given to the statute is
the construction which it has received by the execu-
tive department of the State government, and by
the county treasurers, ever since the revised stat-
utes went into operation, and its correctness has
never, up to the present time, been questioned.
This construction has become universal, and we
are not disposed to disturb it at this time, without
stronger reasons than were urged by counsel upon
the argument. It has become, to some extent, a rule
of property. Many titles depend upon it, and in
this view it is important to sustain the acts of the
deputy, unless his authority to do the act com-
plained of is manifestly against law. This I have
endeavored to show is not the case.

"In conclusion, we think that the deputy treasurer
had, by a fair and reasonable construction of the
statute, the authority to administer the oath re-
quired by section 9; and that this construction hav-
ing been uniformly given to the statute by the State
and county authorities, we have the right, even if
the statute were doubtful, to invoke the aid of the
legal maxim, *communis error facit jus,* and sustain
his authority."

*Communis error facit jus* spells out, as I recall,
that common error makes law. If it were error ad-
ministrative to construe and apply sections 9 and

---

[2] See OAG 1928-1930, pp 658, 659.—Reporter.

10 of part 2 (CLS 1961, §§ 412.9, 412.10) as the department below has done for so many years—and that upon rehearing has become the more doubtful— I would say with *Malonny* that the error itself has made the law to which we owe fidelity.

Souris, J. (*dissenting*).  We granted rehearing of this appeal to reconsider only one of the three issues decided unanimously in 378 Mich 689.  That issue is whether disability benefits provided by section 10 of part 2 of our workmen's compensation law[1] for specific losses of anatomical members are subject to the minimum and maximum limitations upon benefits contained in part 2, section 9.[2]  On rehearing, my Brother O'Hara concludes, contrary to our prior decision, that they are.

He states that this Court, previous to our original decision in this case, had so construed the act; yet, he cites no case in which this Court rendered such a construction of the act.  The fact is that this Court never before had considered the issue we decided on the first decision of this appeal.  It is true, apparently, that the appeal board and the practitioners before that board had *assumed* that the limitations apply to specific losses, but such assumptions are mighty weak reeds to support a proud appellate court's construction of statutory language absent any showing that the assumed construction is consistent with the legislative scheme of compensation.  No one, not even Justice O'Hara, yet has demonstrated that the legislature intended the limitations to apply to specific loss benefits. In fact, in our previous decision, at pages 703 to 705, we analyzed the legislative scheme of compensation and concluded, unanimously, that our holding, now challenged, was consistent therewith.  Without

[1] CLS 1961, § 412.10 (Stat Ann 1960 Rev § 17.160).
[2] CLS 1961, § 412.9 (Stat Ann 1960 Rev § 17.159).

even acknowledgment of that substantive analysis of the act, Justice O'Hara would reverse our decision simply because it upset the assumption of the appeal board and because, he concludes mistakenly, the concept of minimum and maximum limitations upon compensation benefits is a settled, universal principle of our compensation law.

To paraphrase my Brother, there is no vested right in the continuation of appeal board error in the construction of a statute. It may be conceded that all courts should give "the most respectful consideration" (*United States* v. *Moore* [1878], 95 US 760 [24 L ed 588], as quoted in *Boyer-Campbell Co.* v. *Fry* [1935], 271 Mich 282, relied upon by Justice O'Hara) to the construction of a statute by those agencies charged with its administration; but their error of construction, however prolonged it may be, cannot be allowed by a court to foreclose its reasoned decision that the statute does not say what the administrators mistakenly believe it says. "Cogent reason" (again from *United States* v. *Moore, supra*) exists for overruling an administrative construction when a court concludes, as this Court did unanimously, that the legislative language compels a contrary construction and when such contrary construction based upon a "grammatical analytical approach" (see Justice O'Hara's opinion on rehearing) is consistent with the legislative scheme of compensation, as we found it to be in our substantive analysis of the act at pages 703–705 of our original opinion.

It is not true that minimum and maximum limitations apply to all other compensation benefits payable under our act. Consequently, the argument that such limitations therefore must have been intended to apply, as well, to specific loss benefits is specious. The fact is, as was noted in our previous *substantive* analysis of the legislative scheme of

compensation, that of the other compensation benefits payable, *minimum and maximum* limitations apply only to "cases of total incapacity for work, where the injured worker theoretically retains no wage-earning capacity [and where] * * * the legislature impose[d] a minimum weekly benefit limitation, see part 2, § 9(a), in recognition of the need in such cases to provide at least a minimum subsistence level of benefits for that injured employee whose average weekly wage before injury was small." 378 Mich 689, 704. For all other workers whose incapacity for work is partial, there is no *minimum* limitation, but only a maximum, presumably because those workers likely are able to earn some wages during their disability. For those who suffer specific losses and who may or may not be disabled from earning wages, there is no minimum benefit limitation and the only maximum limitation is that provided by the specific loss paragraph of section 10—two-thirds of claimant's average weekly wage. No one yet has pointed out any error in the logic by which we reasoned to this conclusion in our first decision:

"Our construction of the first sentence of the last paragraph of section 10, making it applicable only to the total and permanent disabilities defined in the provisions immediately preceding that sentence, is entirely consistent with the scheme of compensation benefits devised by the legislature, imposing maximum limitations determined by the number of a claimant's dependents upon all weekly benefits except for specific losses and imposing minimum limitations, similarly determined, only upon weekly benefits for total incapacity." 378 Mich 689, 704, 705.

Accordingly, I would reaffirm our previous decision and, upon remand for further proceedings, I would order the appeal board to recompute plain-

tiff's weekly benefit rate in accordance with Part III of our original opinion at 378 Mich 689. I would also allow plaintiff his costs on this rehearing.

T. M. KAVANAGH, J., concurred with SOURIS, J.