LAHAY v HASTINGS LODGE NO 1965 BPOE

Docket No. 56785. Argued February 5, 1976 (Calendar No. 7).—Decided December 21, 1976. Rehearing denied 400 Mich 951.

Richard Lahay claimed workmen's compensation benefits for injuries he suffered on a part-time job as a bartender against Hastings Lodge No. 1965, BPOE, and St. Paul Insurance Company. The plaintiff was concurrently employed full-time as a claims examiner by an insurance company. He was paid $2.50 per hour for 13 hours per week as a bartender and $213.46 per week as a claims examiner. As a result of his injuries, the plaintiff was unable to work at either job for two weeks, after which he returned to his job with the insurance company. The plaintiff was awarded continuing benefits of $70 per week, based upon a 40-hour week at $2.50 per hour plus the value of meals the plaintiff received from his employer. The Workmen's Compensation Appeal Board found that the plaintiff's benefits should be reduced to an amount which does not exceed $70 per week and which, when added to his weekly wages, does not exceed $245.96, his average weekly earnings from both jobs at the time of his injury. The Court of Appeals, Allen, P. J., and N. J. Kaufman and O'Hara, JJ., reversed and remanded for entry of an order of $70 per week. Defendants appeal. *Held:*

1. The statutory language "wage earning capacity after the injury in the same or another employment" in the Worker's Disability Compensation Act concerning computation of benefits refers only to other employment which a claimant undertook to take the place of the employment in which he suffered his injury. Workmen's compensation benefits may not be increased or decreased by taking into account what an injured employee earned at a separate, unrelated contemporaneous job which is unaffected by his disability.

2. The objective of the Worker's Disability Compensation Act is to compensate employees for loss of earning capacity which

Rᴇғᴇʀᴇɴᴄᴇs ғᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs

[1, 5] 82 Am Jur 2d, Workmen's Compensation § 369.

[2] 82 Am Jur 2d, Workmen's Compensation § 373.

[3, 6–8] 82 Am Jur 2d, Workmen's Compensation § 380.

[4] 82 Am Jur 2d, Workmen's Compensation § 1 *et seq.*

results from a work-related injury. The fictitious 40-hour week used to compute benefits for certain employees who work less than that amount of time results from a legislative decision to place the burden of compensating an employee who works at multiple part-time jobs and whose injury at one of the jobs diminishes his earning capacity at the remainder of his jobs upon the employer in whose employ he is injured. If the employee's earning capacity in a concurrent job is unaffected by a work-related injury in another employment, then the concurrent job should not be considered in deciding whether the worker is a part-time or full-time worker. The concurrent job is not considered in determining which method should be used in calculating the average weekly wage or for the purpose of limitation of benefits.

3. An employee working at one full-time job and one part-time job will be considered a part-time employee under the act if his disabling injury affects only the part-time job. The statutory formula then gives a benefit which, when added to his earnings from the job in which he sustained the injury or another job taken in lieu of that one, will not exceed his wages at the part-time job.

4. Plaintiff will receive $21.67 in weekly benefits, 2/3 of his average weekly wage at the part-time job, as long as his wages from the bartending job, or other part-time employment taken in lieu of it, do not exceed $10.83 per week.

Reversed and remanded for recomputation of benefits.

Justice Williams concurred with Justice Ryan, but wrote specially to observe that a wage increase which is unrelated to work-related injuries should not reduce the amount of workmen's disability compensation benefits due to an injured worker. Therefore, if an employee whose disability affects both his full-time job and his part-time job receives any wage increase at either job despite the injury, such increase does not diminish the amount of compensation under the statute.

59 Mich App 145; 229 NW2d 348 (1975) reversed.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—PART-TIME EMPLOYMENT.

An employee who works less than 25 hours per week is considered a part-time employee under the Worker's Disability Compensation Act; his benefits are computed upon his average weekly wage which is found by multiplying his hourly rate or

earnings by the number of hours customarily worked (MCL 418.371[3]; MSA 17.237[371][3]).

2. WORKMEN'S COMPENSATION—BENEFITS—WAGE EARNING CAPACITY —OTHER EMPLOYMENT—WORDS AND PHRASES.

The statutory language "wage earning capacity after the injury in the same or another employment" in the Worker's Disability Compensation Act concerning computation of benefits refers only to other employment which a claimant undertook to take the place of the employment in which he suffered his injury (MCL 418.371[1]; MSA 17.237[371][1]).

3. WORKMEN'S COMPENSATION—BENEFITS—WAGE EARNING CAPACITY —CONTEMPORANEOUS EMPLOYMENT.

Workmen's compensation benefits may not be increased or decreased by taking into account what an injured employee earned at a separate, unrelated contemporaneous job which is unaffected by his disability.

4. WORKMEN'S COMPENSATION—BENEFITS—LEGISLATIVE PURPOSE— WAGE EARNING CAPACITY.

The objective of the Worker's Disability Compensation Act is to compensate employees for loss of earning capacity which results from a work-related injury.

5. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—PART-TIME EMPLOYMENT—FORTY-HOUR WEEK.

The fictitious 40-hour week in the Worker's Disability Compensation Act used to compute benefits for certain employees who work less than that amount of time results from a legislative decision to place the burden of compensating an employee who works at multiple part-time jobs and whose injury at one of the jobs diminishes his earning capacity at the other jobs upon the employer in whose employ he was injured (MCL 418.371[3]; MSA 17.237[371][3]).

6. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—PART-TIME EMPLOYMENT—CONTEMPORANEOUS EMPLOYMENT.

A contemporaneous job should not be considered in deciding whether a worker is a part-time or full-time worker under the Worker's Disability Compensation Act or for the purposes of limitation of benefits where his earning capacity in the contemporaneous job is unaffected by a work-related injury in another employment (MCL 418.371; MSA 17.237[371]).

7. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—PART-TIME
   EMPLOYMENT.

   An employee working at one full-time job and one part-time job
   will be considered a part-time employee under the Worker's
   Disability Compensation Act if his disabling injury, suffered in
   the part-time job, affects only the part-time job.

CONCURRING OPINION

WILLIAMS, J.

8. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—WAGE IN-
   CREASES—PART-TIME EMPLOYMENT.

   *A wage increase of a disabled worker which is unrelated to work-
   related injuries should not reduce the amount of worker's
   disability compensation benefits due to an injured worker;
   therefore, if an employee whose disability affects both his full-
   time job and his part-time job receives any wage increase at
   either job despite the injury, such increase does not diminish
   the amount of compensation benefits (MCL 418.371[1]; MSA
   17.237[371][1]).*

*McCroskey, Libner, VanLeuven, Kortering, Cho-
crane & Brock* (by *Seymour L. Muskovitz)* for
plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R.
Mather)* for defendants.

RYAN, J. The defendant appeals from the judg-
ment of the Court of Appeals which reversed a
decision of the Workmen's Compensation Appeal
Board.[1] The dispute relates solely to the computa-
tion of benefits allotted to the plaintiff, Richard
Lahay.

At the time he was injured, plaintiff was em-
ployed by defendant, Hastings Lodge, as a part-
time bartender. He was concurrently employed on
a full-time basis as a claims adjuster by an insur-
ance company.

While tending bar on February 12, 1971 Lahay

[1] 59 Mich App 145; 229 NW2d 348 (1975).

stepped on an ice cube, slipped, and injured his back when he attempted to break his fall.

Prior to injury, plaintiff was paid $213.46 per week at his full-time job and $32.50 per week, based on 13 hours at $2.50 per hour, plus two meals, at his part-time job. Following his injury, plaintiff was compensated by defendant at $32.50 per week for his inability to work as a bartender. A dispute arose as to whether $32.50 was the correct rate of compensation and a rule 35 hearing[2] was held before the referee

The referee determined that plaintiff was totally disabled from his part-time job from February to June, 1971, and partially disabled thereafter; and, determined that the proper compensation was to be $70 per week. That figure represented a percentage of $105, which the referee found to be plaintiff's "average weekly wage" according to his construction of that phrase in § 371 of the Workmen's Compensation Act.[3]

Defendant appealed to the Workmen's Compensation Appeal Board, which, by a 3-to-2 vote, reversed the referee's determination on compensation and limited the award to $32.50 per week.

The Court of Appeals in turn reversed the Workmen's Compensation Appeal Board and reinstated the hearing referee's order. In doing so, the court began by determining plaintiff's average weekly wage according to MCLA 418.371; MSA 17.237(371). The statute reads:

---

[2] Administrative Code, 1959 AACS, R 408.35 states:

"If the department shall have reason to believe that there has not been compliance with the provisions of the compensation act, it may on its own motion give notice to the parties and hold a hearing for the purpose of determining the facts and the rights of the parties. Such notice shall contain a statement of the matter to be considered."

[3] 1969 PA 317, § 371; MCLA 418.371; MSA 17.237(371).

"(1) The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section *as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury,* the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. *The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.*

"(2) Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, *but in no case less than 40 times his hourly rate* of wage or earning. *When* it is found that the established normal work week for the employee's classification of *employment* in the establishment of the employer where employee suffered a personal injury *is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater.*

"(3) When a hearing referee finds that the employee was employed specifically and not temporarily on a part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the average number of hours worked in the part-time employment. *When it is found that the employee has worked an average of 25 hours or more per week in all of his current employments, he shall not be considered a part-time employee.*

"(4) If the hourly earning of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

"(5) Where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5." (Emphasis added.)

According to subsection 3 of the statute, an employee who works less than 25 hours per week is considered a part-time employee. His average weekly wage is then established using the formula outlined in the last sentence of subsection 2 of the statute, that is, by multiplying the employee's hourly rate or earning by the number of hours customarily worked.

Accordingly, the computation in this case would be 13 hours at the hourly rate of $2.50 to equal $32.50 as plaintiff's average weekly earnings. However, the Court of Appeals observed that because the total hours that plaintiff worked "in all of his current employments", including, of course, his full-time job, resulted in an average work week of more than 25 hours per week, subsection 3 of the statute requires that plaintiff be considered a full-time employee. Thus, reasoned the Court of Appeals, the hearing referee was correct in computing plaintiff's average weekly wage according to the first sentence of subsection 2 of the statute, at 40 hours multiplied by $2.50 per hour, plus meals, or $105 per week. Compensation was then correctly computed based on the extent of plaintiff's disability.

The result was that plaintiff earned more after his injury than he received prior to his injury.

Diagramatically, the scheme can be observed as follows:

### Wages at Time of Injury

| | |
|---|---:|
| Claims adjuster wages: | $213.46 |
| Bartending wages: | 32.50 |
| | |
| Total: | $245.96 |

### Wages and Compensation During Period of Partial Disability

| | |
|---|---:|
| Claims adjuster wages: | $213.46 |
| Compensation for injury as bartender: | 70.00 |
| Total: | $283.46 |

A majority of the Workmen's Compensation Appeal Board utilized the final sentence of subsection 1 of this statute to limit plaintiff's compensation award to $32.50 so that his total earnings would not be more than his average weekly earnings at the time of his injury.

The Court of Appeals rejected this application of the limitation clause in subsection 1, following the rule in *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956), where this Court said that the statutory language "wage earning capacity after the injury in the same or another employment" refers only to other employment which claimant undertook to take the place of the employment wherein he suffered his injury. Put another way, "If [a] defendant's liability for compensation may not be increased by taking into consideration what plaintiff was earning at another job at time of injury, it follows, as a matter of logic and justice, that it may not be decreased by taking

into account what he continued to earn on that other job after injury". 345 Mich at 294.

While the Court of Appeals was uneasy about this Court's interpretation of the statutory language in *Bowles,* it felt obligated to follow precedent, and further observed that the Legislature's silence in the face of *Bowles* must be construed as consent to the accuracy of the interpretation of the phrase in question, citing *Magreta v Ambassador Steel Co,* 380 Mich 513; 158 NW2d 473 (1968).[4]

Defendant urges this Court to overrule *Bowles,* arguing that its application defeats the goals of the Workmen's Compensation Act. Defendant argues that the purpose of the act is to link the amount of benefits payable to an injured employee to the amount of wages he actually lost.[5] The doctrine in *Bowles,* defendant contends, makes it a virtual certainty that an employee who holds a full-time job and becomes disabled from performing a concurrent part-time job will receive more in benefits than he lost in wages.

Defendant further argues that if *Bowles* is overruled, then subsection 3 of the statute, which creates an artificial 40 hour work week for employees whose actual hours worked exceeds 25 hours, and subsection 1 which limits post-injury wages-plus-benefits to the amount of pre-injury

[4] In other instances, the Court of Appeals has relied on subsection 5 of the statute to compute the wages of part-time employees. *See e.g. Davis v Merrill School System,* 67 Mich App 20; 239 NW2d 745 (1976); *Mora v Fowlerville Public School System,* 37 Mich App 371; 194 NW2d 481 (1971). Under our treatment of the issue, the existence of concurrent employment does not itself constitute "special circumstances" which would require resort to subsection 5.

[5] Defendant is not quite correct in this statement. MCLA 418.371(1); MSA 17.237(371)(1) states that compensation is to fairly represent the impairment of the employee's working *capacity.* However, the formulae for calculating working capacity, in all but unusual cases, use wages multiplied by hours per week worked in arriving at the employee's average weekly earnings. Thus, for practical purposes, wages and working capacity are closely aligned.

actual wages, would be able to operate together to accomplish the objectives of the act.

Upon review, we believe that *Bowles* should be reaffirmed because it currently stands as a valid prohibition against using an employee's full-time job earnings to limit the benefits received from a disability affecting only a part-time job. However, we conclude that the Court of Appeals' analysis of our holding in *Bowles* was incomplete and its application to the case at bar erroneous. We therefore remand this case for reconsideration and recomputation of benefits according to principles outlined in this opinion.

## I

In *Bowles,* plaintiff was working part-time for defendant as a common laborer and also had a full-time job as a timekeeper. He was injured on the part-time job two weeks after he started. Although he was completely disabled as a common laborer, his injury did not affect his earning capacity in his full-time job. Plaintiff worked 24 hours the first week and 22 hours the next for defendant, at $1.25 per hour, for average weekly earnings of $28.75. Applying the statutory formula, however, plaintiff's weekly wage was calculated to be $50 for Workmen's Compensation purposes, and he was awarded $30 per week in benefits. His average weekly earnings from the timekeeper's job at the time of injury was $64.22, so that his actual weekly wages were $92.97. Subsequently, plaintiff timekeeper's wages rose to $93.20 weekly. Defendant then argued that the statutory limitation[6] of

---

[6] 1948 CL 412.11; MSA 17.161 reads in part:

"The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury."

benefits should operate to bar plaintiff from further compensation under the act.

This Court rejected defendant's argument, construing the term "wage earning capacity in the same or another employment" according to *Brandfon v Beacon Theatre Corp,* 300 NY 111; 89 NE2d 617 (1949), to mean those wages earned from the "same" employment in which the employee was injured, or from "another" job which he took in its place. The New York court, construing an identical statute, stated:

"While superficially it might appear that the employee's earnings from any and all sources must be taken into account, more careful study, as well as a regard for the context and design of the statute, makes it evident that it does not apply or relate to a case in which an employee was engaged, prior to the accident, in dual and dissimilar employments. Rather, it was the legislative purpose that there be measurement in terms of 'another employment' only where a worker takes another position because his injury disabled him from continuing in the original one. In other words, the wages to be considered after the accident are those earned from the 'same' employment in which he was hurt or from 'another' employment which he undertook in its place. * * *

"*However, in the present case, where the claimant held 2 concurrent jobs, he is entitled to be compensated for the earnings lost to him by virtue of his disability as an electrician, without regard to his salary as a projectionist.* His wages in such other unrelated employment, it is true, were not affected by his injury, but he possessed a certain earning ability as an electrician, and that ability the accident impaired. To the extent of that impairment he is entitled to compensation, and consideration of his wages as projectionist—which would partially or entirely deprive him of such compensation—would contravene the spirit and purpose of the statute." 300 NY at 114–115 (emphasis added).

In *Bowles,* we subscribed to this language and,
accordingly, refused to consider plaintiff's wages as
a timekeeper in computing compensation-plus-
wages for the purposes of the statutory limitation.
We reasoned that such a result was just because
we believed that an employer should not be able to
use an employee's wages earned at a separate job
to limit its liability if those wages could not be
considered to increase its liability.[7]

II

*Bowles* achieved a just result as far as it went:
an increase in wages in a separate, unrelated job
which is unaffected by the employee's disability
should not be considered in calculating the bene-
fits received as a result of a disabling injury in
different employment. The apparent inequity—
that Lahay would receive more in compensation
benefits than he earned in wages—results from the
Court of Appeals' incomplete application of *Bowles*
to subsections 2 and 3 of MCLA 418.371; MSA
17.237(371), because subsection 3 allows indulgence
in the fiction of the 40 hour work week for em-
ployees who do not actually work that amount of
time.

The objective of the Workmen's Compensation

---

[7] *Buehler v University of Michigan,* 277 Mich 648; 270 NW 171
(1936), was cited for the proposition that defendant could not be held
liable for loss of working capacity on plaintiff's full-time job if the
injury sustained while working for defendant part-time so disabled
him. Defendant herein argues that such reliance was ill-founded
because 1943 PA 245 amended the statute to provide part-time
employees with an artificial 40-hour work week. Thus, defendant
argues, the court overlooked the fact that what plaintiff Bowles would
have lost in earning capacity at his full-time job he would have made
up in compensation benefits from his part-time job based on a 40-hour
week. Although it is true that part-time employees who qualify under
the last sentence of subsection 3 of the present statute will receive a
windfall if not limited by subsection 1, it does not mean that *Bowles*
was incorrectly decided.

Act is to compensate employees for loss of earning *capacity* which results from a work-related injury, MCLA 418.371(1); MSA 17.237(371)(1). The fictional 40-hour work week is the result of a legislative decision to place the burden of compensating an employee, who works at multiple part-time jobs and whose injury at one of the jobs diminishes his earning capacity in the remainder of his jobs upon the employer in whose employ he was injured. Thus, the first sentence of subsection 2 and the last sentence of subsection 3 of the statute ensure that an employee whose disability extends to *"all* of his current employments" will be adequately and justly compensated.[8]

The last sentence of subsection 1 of the statute illustrates the legislature's intention that an employee should not receive a windfall from his injury. Thus, an injured employee who obtains substitute employment, albeit at reduced earning capacity, shall have his compensation reduced *pro tanto.* The dimension added by our decision in *Bowles* is that unrelated and unaffected concurrent employment shall not be considered in calculating benefits or limitation of benefits.

---

[8] This result is achieved in other jurisdictions by statutory provisions which allow the inclusion of both part-time and full-time wages in the initial calculation of "average weekly wage" if the two employments are "similar" or "related". *See* 2 Larson, Workmen's Compensation Law, § 60.31 and fn 58. Application of this rule, however, has been difficult, *see, e.g., Black v American & Foreign Ins Co,* 123 Ga App 133, 138; 179 SE2d 679, 683 (1970) (Jordan, P. J., dissenting), causing Professor Larson to level this criticism:

"The rule refusing to combine earnings from concurrent employments unless they are 'similar' or 'related' is unnecessary from the point of view of statutory construction, unsound as a matter of accomplishing the purposes of the legislation, inhumane from the point of view of the claimant, and logically absurd as to the distinctions on which it is based." Larson, *supra.*

The Michigan statute, together with the application of our decision in *Bowles* as outlined herein avoids this problem by eschewing the "similarity" test, and by focusing on whether the disability also affects earning capacity in the concurrent employment.

To give full effect to the intent of the Legislature, however, the *Bowles* rationale must apply to the entire statute. Unrelated and unaffected concurrent employment should not be considered under the statute for *any* purpose.

The last sentence of subsection 3 of the statute, therefore, should be read to apply only to all of the employee's current employments *affected by his disabling injury.* If the employee's earning capacity in a concurrent job is unaffected by a work-related injury in another employment, then the concurrent job should not be considered in deciding whether the worker is a part-time or full-time worker. The unaffected concurrent job, therefore, will not be considered in determining whether subsection 2 or subsection 3 should be utilized in calculating the average weekly wage. Nor will it be used for purposes of the limitation of benefits clause in subsection 1.

The result, then, is that an employee working at one full-time job and one part-time job will be considered a part-time employee under the act if his disabling injury affects only the part-time job, and in such case his average weekly wage would be calculated according to the first sentence of subsection 3 of the statute. Because the rule in *Bowles* limits the scope of the limitation in subsection 1 to the part-time job, the amount of benefits awarded the employee, when added to his earnings from the job in which he sustained the injury or another job taken in lieu thereof, will not exceed his wages at the part-time job.

Thus, in the instant case, Lahay's actual average weekly wage was $32.50. His actual hours worked at the part-time job (the only one of "all his current employments" *affected by the disability)* were 13. Therefore, his average weekly earnings

under the statute are calculated according to the first sentence of subsection 3 to be $2.50 per hour multiplied by an average of 13 hours worked each week, or $32.50. Compensation was paid at a rate of 2/3 the statutory wage by the hearing referee. Thus, plaintiff will receive $21.67 in weekly benefits as long as his wages from the bartending job, or other part-time employment taken in lieu thereof, do not exceed $10.83 per week. If such earnings exceeded that amount, his benefits will be reduced according to the formula in subsection 1.

If an employee's disability affected both his full-time job and his part-time job, then the last sentence of subsection 3 would apply and the average weekly wage would be calculated according to subsection 2 on a 40-hour work week basis. If both jobs are affected, *Bowles* would not apply and the limitation in subsection 1 would be determined according to his total actual wages.

Applying *Bowles* in this manner gives full effect both to the legislative intent that part-time employees be fairly compensated according to their loss of earning capacity, and to the legislative concern that an employee not receive a windfall from his injury.

Accordingly, the Court of Appeals is reversed and the cause is remanded for recomputation of benefits in conformance with this opinion.

KAVANAGH, C. J., and LEVIN, COLEMAN, FITZGERALD, and LINDEMER, JJ., concurred with RYAN, J.

WILLIAMS, J. *(concurring)*. I concur with the result in this case and the essential rationale put forth by my Brother RYAN.

However, I must write specially to observe that in *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956), this Court implicitly held wage

increases which were unrelated to work-related injuries should not reduce the amount of compensation rightfully due to an injured worker.

I would therefore add to Justice RYAN's opinion that if the employee whose disability affects both his full-time job and his part-time job receives any wage increase at either job despite the injury, the *Bowles* rationale would not allow such increase to diminish the amount of compensation under subsection 1. This safeguards the employee from the kind of inequitable result this Court ruled against in *Bowles*.