GASPARICK v H C PRICE CONSTRUCTION COMPANY

Docket No. 56926. Argued February 5, 1976 (Calendar No. 8).—Decided December 21, 1976.

Robert Gasparick claimed workmen's compensation benefits against his employer, H. C. Price Construction Company, and American Mutual Insurance Company for an injury he suffered in the course of his employment. Until his injury the plaintiff worked for two weeks on pipeline construction with gross pay of $258.26 for 60 hours of work for the first week, and $307.12 for 72 hours in the second week. Because of seasonal weather conditions the employer operates for six months of the year, and the defendants challenge the Workmen's Compensation Appeal Board's computation of the plaintiff's average weekly wage by averaging the two gross amounts rather than pro-rating his wages over a 52-week year. The Court of Appeals, T. M. Burns, P. J., and D. E. Holbrook and D. F. Walsh, JJ., denied leave to appeal (Docket No. 22556). Defendants appeal. *Held:*

1. There is no specific provision in the Workmen's Compensation Act which reduces an employer's liability because its workers hold seasonal jobs. The legislative intent, which is clearly expressed in the statute, is that there not be a seasonal employment formula for the computation of the average weekly wage.

2. The Workmen's Compensation Act was designed to compensate an employee for his loss of earning capacity resulting from work-related injury and not merely his loss of wages. The act shows a legislative determination to require employers in certain instances to bear the burden of an employee's incapacitating injuries despite the fact that the compensation paid will be in excess of the amount of actual wages that would have been earned by the employee.

3. The Legislature has repealed the residual clause of the

REFERENCES FOR POINTS IN HEADNOTES
[1–2, 5] 82 Am Jur 2d, Workmen's Compensation § 369.
[3] 82 Am Jur 2d, Workmen's Compensation § 1.
[4] 82 Am Jur 2d, Workmen's Compensation § 348.
[6] 82 Am Jur 2d, Workmen's Compensation § 357.

statute which, arguably, would have controlled in this case. Therefore, the seasonal employer whose employee's work-related injury incapacitates him from off-season employment must bear the burden of compensating the employee for his year-round loss of earning capacity.

4. During the "season", the seasonal employer will pay his injured employee full compensation benefits based on the employee's average weekly wage and reduced by earnings from substitute employment. During the "off-season", the amount of compensation will be diminished by the amount of wages earned at the replacement job if earning capacity at that job is unaffected or only partly affected by the injury.

Affirmed.

1. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—SEASONAL EMPLOYMENT.

There is no specific provision in the Workmen's Compensation Act which reduces an employer's liability for workmen's compensation benefits because its workers hold seasonal jobs (MCL 412.11; MSA 17.161).

2. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—STATUTES— COURTS.

The legislative intent clearly expressed in the Workmen's Compensation Act is that there not be a separate formula for computation of benefits for a seasonal employee (MCL 412.11; MSA 17.161).

3. WORKMEN'S COMPENSATION—BENEFITS—LEGISLATIVE PURPOSE— WAGE EARNING CAPACITY.

The Legislature designed the Worker's Disability Compensation Act to compensate an employee for his loss of earning capacity resulting from work-related injury and not merely his loss of wages.

4. WORKMEN'S COMPENSATION—BENEFITS—ACTUAL WAGES.

The Legislature has determined to require employers in certain instances to bear the burden of an employee's incapacitating injuries despite the fact that, at times, the workmen's compensation benefits paid will be in excess of the amount of actual wages that would have been earned by the employee (MCL 412.11; MSA 17.161).

5. WORKMEN'S COMPENSATION—BENEFITS—SEASONAL EMPLOYMENT— WAGE EARNING CAPACITY.

A seasonal employer whose employee's work-related injury inca-

pacitates him from off-season employment must bear the burden of workmen's compensation benefits to the employee for his year-round loss of wage earning capacity (MCL 412.11; MSA 17.161).

6. WORKMEN'S COMPENSATION—BENEFITS—COMPUTATION—SEASONAL EMPLOYMENT.

   A seasonal employer is liable for full workmen's compensation benefits for his injured employee during the working season, reduced by earnings from substitute employment; during the employer's off-season the amount of compensation will be diminished by the amount of wages earned by the employee at a replacement job if his earning capacity at that job is unaffected or only partly affected by the injury.

*Wisti & Jaaskelainen* (by *James F. Tercha)* for plaintiff.

*Strom, Butch, Quinn & Rosemurgy* for defendants.

RYAN, J. We granted leave in this workmen's compensation case in conjunction with *Lahay v Hastings Lodge No 1965, BPOE,* 398 Mich 467; 247 NW2d 817 (1976), decided today which concerned the computation of the average weekly wage for a part-time employee who concurrently held a full-time job as well. The issue in this case concerns the proper method of computing the "average weekly wage" under MCLA 412.11; MSA 17.161 for an employee engaged in seasonal employment.

Defendant H. C. Price Construction Company was engaged in the construction of a pipeline in Michigan's Upper Peninsula. The plaintiff, Robert Gasparick, was working as part of Price's tree clearing operation when he was struck by a falling tree on August 10, 1968 and sustained severe injuries. Gasparick had worked for only two weeks prior to the accident and received two paychecks. The first, for $258.26, included 28 hours of over-

time and the other, for $307.12, included 32 hours of overtime.

The hearing referee, whose decision was affirmed by the Workmen's Compensation Appeal Board, found that plaintiff's "average weekly wage" was $282.69, the total wages divided by the number of weeks worked, based on the formula of the second section of MCLA 412.11; MSA 17.161.

The Court of Appeals denied leave to appeal.

Initially, the "average weekly wage" in this case is to be calculated according to MCLA 412.11; MSA 17.161, which was then in effect,[1] and which states:

"(1) The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee *computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury,* the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. *The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.*

"(2) *'Average weekly wage' means the weekly wage earned by the employee at the time of his injury; inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe benefit or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning.* When it is found that the established normal work week for the employee's classification of employment in

[1] 1967 PA 140 was approved on June 27, 1967 and ordered to take immediate effect. The accident occurred August 10, 1968. In 1969, this statute was amended, 1969 PA 317, and appears in essentially the same form as MCLA 418.371; MSA 17.237(371), changes therein being immaterial to the disposition of this appeal.

the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater.

"(3) When the department finds that the employee was employed specifically and not temporarily on a part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the average number of hours worked in the part-time employment. When it is found that the employee has worked an average of 25 hours or more per week in all of his current employments, he shall not be considered a part-time employee.

"(4) If the hourly earning of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

"(5) *In cases where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provision, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed* and multiplying such daily wage by the number of workdays customary in the employment, but not less than 5." (Emphasis added.)

Price suggests that the formula for the computation of "average weekly wage" as outlined in subsection 2 should not be employed in this case because the seasonal nature of the pipeline business gives rise to "special circumstances" justifying application of a different formula for the determination of Gasparick's "average weekly wage". He cites 2 Larson, Workmen's Compensation Law, § 60.22, in support of this proposition:

"Claimant's probable future loss is a full-time loss only if the line of work for which he is trained and qualified will normally continue to provide full-time employment. It is well known that many employments are normally seasonal, and wages may to some extent be adjusted so that the worker expects to live on his seasonal earnings during the regular periods of unemployment. If a school teacher, for example, is paid $1,000 a month for nine months of the year, there is no reason to calculate earning capacity on the unrealistic basis of $1,000 a month for twelve months; if the wage statute says that monthly wages shall be multiplied by twelve, this (and any comparable situation) is an appropriate occasion for application of the *residual clause,* which exists for the express purpose of taking care of just such nonstandard wage relations." (Emphasis added.)

The *residual clause* to which Professor Larson refers, however, has been eliminated from the current Michigan statute, thus precluding a computation of Gasparick's "average weekly wage" in accordance therewith.[2]

Price acknowledges that a resort to subsection 5 of the statute would not be helpful to its argument in the case at bar because, even if plaintiff had established an earning record with Price during the year prior to the accident, the formula in that section "is clearly not intended to encompass a

---

[2] An example of the residual appeared in 1912 (1st Ex Sess) PA 10, part II § 11, a predecessor of the current statute, which stated:

"In cases where the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such annual earnings shall be taken at such sum as, having regard to the previous earnings of the injured employee, and of other employees of the same or most similar class, working in the same or most similar employment, in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee at the time of the accident in the employment in which he was working at such time."

The statute was construed generally in *Andrejwski v Wolverine Coal Co,* 182 Mich 298; 148 NW 684 (1914). This provision was eliminated when the statute was amended, 1943 PA 245.

situation where the employment is other than essentially full-time throughout the year."[3] Subsection 4 of the statute is inapplicable in this case because plaintiff's hourly earnings can be ascertained. Thus, there exists no specific provision in the Michigan statute which might be employed to reduce Price's liability on the basis that its workers hold seasonal jobs.

Price's solution to this apparent dilemma is to urge this Court to judicially enact a seasonal employment formula by the application of equitable principles.

Price argues that the operation at which plaintiff was working was seasonal; that the average weekly wage for seasonal employees should be calculated differently than the average weekly wage for an employee whose employment is continuous over the year; that seasonal employees, due to the nature of the employment, will earn a higher rate of pay than year-round employees; and that the most equitable formula in this case would be to take plaintiff's actual average weekly pay of $282.69, multiply that by the 26 weeks during which plaintiff could have reasonably expected to work for Price, and divide this number by 52, the number of weeks in a year, to arrive at the average weekly wage base to compute compensation benefits.

This argument, however equitably appealing, is utterly without statutory support. This Court is not empowered to fashion what it may perceive to be the equitably appealing result of creating a seasonal employment formula for the computation of the plaintiff's "average weekly wage" when the legislative intent, which is clearly expressed in the statute, is otherwise.

[3] Brief of appellant, at 18.

It must be understood that, according to subsection 1 of MCLA 412.11; MSA 17.161, the Legislature designed the act to compensate an employee for his loss of earning *capacity* resulting from work-related injury and not merely his loss of wages; subsections 2 through 5 of the statute, which prescribe the methods for calculating the wage base, must be read with that in mind. Consequently, although designed to compensate an employee and not to punish an employer, the act itself reveals a legislative determination to require some employers in certain instances to bear the burden of their employees' incapacitating injuries despite the fact that, at times, the compensation paid will be in excess of the amount of actual wages that would have been earned by an employee.

One such example is the case of a worker employed at several part-time jobs by different employers whose injury in one of the jobs incapacitates him in all of them. The Legislature has dealt with such cases by creating a fictitious 40 hour week for the employee who works part-time for one employer, but whose total employments exceed 25 hours per week, and whose injury suffered on one part-time job affects his earning capacity in his other current employments.[4] Cf. *Lahay v Hastings Lodge No 1965, BPOE, supra.*

---

[4] The last sentence of subsection 1, however, operates to prevent recovery in excess of the employee's total wages when the fictitious 40-hour week is used. Thus, an employee who works 15 hours per week for employer A, and 20 hours per week for employer B, and whose injury sustained while working for A incapacitates him in both jobs, is not a part-time employee under section 3. His wage base is calculated by multiplying his hourly wage from A times 40. Subsection 2, MCLA 412.11; MSA 17.161. If he earned $2 per hour from both employers ($30 per week from A and $40 per week from B), his average weekly wage for workmen's compensation purposes would be $80. Because the employee's injury incapacitated him in both job A and job B, but because he sustained his injury while working for A, A must pay compensation based on the $80 average weekly wage. But

Another application of this legislative policy occurs in the seasonal employment situation such as in the case at bar. This is evident, not only because of the absence of a special provision in the statute dealing with computation of the wage base for an employee engaged in seasonal work, but also because the Legislature has eliminated the residual clause as it was formulated in 1912 (1st Ex Sess) PA 10, part II, § 11, which, arguably, would have controlled in this case.

Therefore, just as in the case of the employer of the part-time worker who was incapacitated in all of his part-time jobs, the seasonal employer whose employee's work-related injury incapacitates him from off-season employment must bear the burden of compensating the employee for his year round loss of earning capacity.[5]

It is evident, of course, that this legislative scheme may appear to give rise to many potential inequities. However, on closer analysis, most of the problems can be eliminated by application of the limiting language of the last sentence of subsection 1 of the statute.

subsection 1 limits the employee's recovery to $70 per week less wages earned at job A or job B, or from another job taken in lieu thereof. *Lahay v Hastings Lodge No. 1965 BPOE,* 398 Mich 467; 247 NW2d 817 (1976); *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956).

This example illustrates how the legislative policy expressed in the statute can operate to compel one employer to pay an employee more in compensation than he would have paid in wages. This result, however, is understandable if one remembers that it is the legislative intent to compensate loss of earning *capacity,* not merely lost wages.

[5] The Workmen's Compensation Appeal Board has apparently applied this sort of reasoning in the past. Plaintiff cites two cases in which a seasonal employee's average weekly wages were calculated without reference to the period over which the employee could reasonably have been expected to work. In *Stahlbaum v Frank Strausberg & Son Co,* 1973 WCABO 276, the appeal board upheld an award to a seasonal employee which included a determination of an average weekly wage without reference to the term of employment. In *Dougherty v Carr School, Fourth Class School, District Six,* 1962 WCABO 377, the board sustained an award of compensation to a schoolteacher in the vacation period when school was not in session.

As we interpreted the limiting language of subsection 1 in *Bowles v James Lumber Co,* 345 Mich 292, 295; 75 NW2d 822 (1956), the expression "same or another employment" means "the 'same' employment in which [the employee] was hurt or \* \* \* 'another' employment which he undertook in its place". Because an off-season job can fairly be considered to be taken in place of the seasonal job, wages earned therefrom can properly be considered in calculating the wages-plus-compensation figure to be used in applying subsection 1's limiting language. Thus, during the "season", the seasonal employer will pay his injured employee full compensation based on the employee's average weekly wage as computed according to subsection 2, and reduced by earnings from substitute employment according to subsection 1. During the off-season, the amount of compensation will be diminished by the amount of wages earned at the replacement job according to subsection 1 if earning capacity regarding that job is unaffected or only partly affected by the injury.[6]

This result assumes that the employee's off-season job pays as much, *pro tanto,* as his seasonal job, which may or may not be the case. Inequities which may seem to arise from the absence of a specific provision for the computation of the injured seasonal worker's "average weekly wage" must be addressed to the attention of the Legislature for correction in the light of the declared legislative purpose to obligate employers to compensate employees for loss of earning *capacity* and not mere loss of *wages.*

We hold, therefore, that the hearing referee was

---

[6] The "unaffected" off-season job can be considered for the purposes of the limiting language of § 1 of the statute because it is not a "concurrent employment" with the seasonal job. Consequently, the proscription of *Bowles v James Lumber Co, supra,* would not apply.

correct in his application of subsection 2 of the statute to the computation of benefits in this case and in his computation of the plaintiff's average weekly wage. Accordingly, the decisions of the referee and of the Workmen's Compensation Appeal Board are affirmed.

Affirmed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and LINDEMER, JJ., concurred with RYAN, J.