IRVAN v BORMAN'S, INCORPORATED

Docket No. 43233. Submitted October 15, 1979, at Detroit.—Decided March 17, 1980. Leave to appeal applied for.

David G. Irvan was a part-time employee of Farmer Jacks, a division of Borman's, Incorporated, earning an average weekly wage of $28, when he suffered a work-related injury which resulted in a temporary total disability from unskilled labor. Following the injury, Farmer Jacks continued to pay Irvan $28 a week. In November, 1976, Irvan filed a petition for a hearing with the Bureau of Workmen's Compensation. After a hearing it was determined that the correct rate for weekly compensation for Irvan was the statutory minimum of $78. Borman's appealed to the Worker's Compensation Appeal Board which affirmed the determination of the referee. From that decision Farmer Jacks now appeals to the Court of Appeals by leave granted. On appeal, Borman's contends that the minimum provided for in the Worker's Disability Compensation Act applies only to full-time employees. Held:

A part-time employee is not entitled to an award of benefits in an amount in excess of the employee's average weekly wage in light of an express prohibition against such an award in a provision of the Worker's Disability Compensation Act. The minimum-rate language found in other provisions of the act should be read to apply only to full-time employees or fictional 40-hour employees. A part-time employee is subject to an explicit wage formula whereby the average weekly wage is determined by multiplying the employee's hourly rate by the average number of hours worked in the part-time employment. Compensation payable to such an employee shall not exceed the average weekly earnings at the time of the injury.

Reversed and remanded.

M. J. KELLY, J., dissented. He would hold that, since Irvan's

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6, 7] 81 Am Jur 2d, Workmen's Compensation § 347.
[2, 6] 82 Am Jur 2d, Workmen's Compensation §§ 367-369.
[3] 73 Am Jur 2d, Statutes §§ 214-216.
[4] 73 Am Jur 2d, Statutes § 194 *et seq.*
[5] 73 Am Jur 2d, Statutes §§ 191, 254.

injury resulted in a temporary total disability from unskilled labor, he was entitled to the statutory minimum. He would affirm.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — BENEFITS — WAGES.

Employers in certain instances are required to bear the burden of an employee's incapacitating injuries despite the fact that, at times, the workmen's compensation benefits paid will be in excess of the amount of actual wages that would have been earned by the employee.

2. WORKERS' COMPENSATION — PART-TIME EMPLOYEES — STATUTES.

A part-time employee who has suffered a work-related injury which impairs his earning capacity in the part-time employment only is entitled to worker's disability compensation benefits in an amount determined by multiplying the employee's hourly rate or earning by the average number of hours worked in the part-time employment; when it is found that the employee has worked an average of 25 hours or more per week in all of his current employment, he shall not be considered a part-time employee (MCL 418.371; MSA 17.237[371]).

3. STATUTES — STATUTORY CONSTRUCTION — GENERAL PROVISIONS — SPECIFIC PROVISIONS.

Additional words of qualification needed to harmonize a general and a specific provision in the same statute should be added to the general provision rather than to the specific provision.

4. STATUTES — LEGISLATIVE INTENT — LITERAL CONSTRUCTION.

An exception of qualification is presumed to have been intended by the Legislature where an absurd result is reached by a literal construction of a statute.

5. STATUTES — STATUTORY CONSTRUCTION.

The various provisions of a single act should be read so that all provisions may, if possible, have effect without repugnancy or inconsistency, so as to render the statute a consistent and harmonious whole.

6. WORKERS' COMPENSATION — PART-TIME EMPLOYEES — AVERAGE WEEKLY WAGE — STATUTES.

A part-time employee who has suffered a work-related injury is not entitled to an award of worker's disability compensation benefits in an amount in excess of the employee's average weekly wage (MCL 418.371; MSA 17.237[371]).

DISSENT BY M. J. KELLY, J.

7. WORKER'S COMPENSATION — PART-TIME EMPLOYEES — TOTAL LOSS
   OF EARNING CAPACITY — STATUTORY MINIMUM BENEFITS —
   STATUTES.
   *A part-time employee who has suffered a work-related injury,
   which has resulted in a total loss of earning capacity, is
   entitled to receive the statutory minimum worker's disability
   compensation benefits; the emphasis should be on earning
   capacity, not on hours worked or wages earned, which may
   allow the injured employee to receive more in worker's compen-
   sation benefits than he received in wages or salary for his part-
   time employment (MCL 418.351, 418.355; MSA 17.237[351],
   17.237[355]).*

*Rifkin, Kingsley & Rhodes, P.C.,* for plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by
*Robert F. Auld),* for defendant.

Before: M. F. CAVANAGH, P.J., and M. J. KELLY,
and D. S. DeWITT,* JJ.

D. S. DeWITT, J. The plaintiff, David G. Irvan,
was a part-time employee of the defendant,
Farmer Jacks, a division of Borman's, Incorpo-
rated, earning an average weekly wage of $28 at
the time of his injury. Following this injury, the
defendant continued to pay the plaintiff $28 a
week. In November, 1976, the plaintiff filed a
petition for a hearing with the Bureau of Work-
men's Compensation. After a hearing held on
March 7, 1978, an administrative law judge found
that the correct rate for weekly compensation was
the statutory minimum, $78. From this decision,
the defendant appealed to the Worker's Compensa-
tion Appeal Board. They, in turn, affirmed the
decision of the administrative law judge. From this

* Circuit Judge, sitting on the Court of Appeals by assignment.

decision, the defendant applied for and was granted leave to appeal to this Court.

Defendant's argument is that the minimums provided for in the Worker's Disability Compensation Act, MCL 418.101 *et seq.; MSA* 17.237(101) *et seq.,* apply only to full-time employees. Applying these minimums to part-time employees, as the plaintiff herein, bestows a windfall upon them in contravention of the aims and purposes of the statute and of public policy itself. Further, § 371 of the statute specifically precludes this practice, limiting the compensation awardable in such situations to a percentage of the employee's average weekly wage.

A series of cases construing three sections of the Worker's Disability Compensation Act raises the question of whether payment in excess of an injured employee's average weekly wage at the time of injury is proper in the part-time employment situation. This discussion is directed toward attempting a reconciliation of those various cases and toward reaching a reasonable interpretation of the act's seemingly conflicting provisions.

The three statutory provisions at issue provide for the calculation and adjustment of benefits. The first, MCL 418.351; MSA 17.237(351), sets forth a general schedule of awards to be paid throughout the duration of the disability:

"Sec 351. (1) While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 2/3 of his average weekly wages, but not more than $64.00, if such injured employee has no dependents; $69.00 if 1 dependent; $75.00 if 2 dependents; $81 if 3 dependents; $87.00 if 4 dependents; and $93.00 if 5 or more dependents; except as provided in section 355. Compensation shall be paid

for the duration of the disability. *Weekly payments shall not be less than $27.00 if there are no dependents;* $30.00 if 1 dependent; $33.00 if 2 dependents; $36.00 if 3 dependents; $39.00 if 4 dependents; and $42.00 if 5 or more dependents; *except as provided in section 355.* Compensation shall be paid for the duration of the disability." (Emphasis added.)

Section 351 "weekly payment" amounts are adjusted in accordance with MCL 418.355; MSA 17.237(355) as follows:

"Sec 355. (1) The maximum weekly rate in each dependency classification in this act shall be adjusted once each year in accordance with the increase or decrease in the average weekly wage in covered employment, as determined by the employment security commission. The average weekly wage in covered employment determined by the employment security commission for the year ending June 30, 1967, shall be the base on which such adjustments are made.

"(2) A second adjustment, if any, shall be made on January 1, 1970 and shall reflect the change, if any, between the average weekly wage for June 30, 1969 and the average weekly wage for June 30, 1968 and the adjustment shall be made in like manner on each January 1 thereafter, utilizing the average weekly wage for the preceding June 30.

"(3) Adjustment for the statutory maximum rate shall be made only if there had been an increase or decrease in the average weekly wage of at least $1.50 during the preceding year, applied to the June 30, 1967, base and the director shall announce the adjustment each December 1, to become effective the following January 1. If in any year the change is less than $1.50, the director shall announce no change for the following year but the amount of change in such year shall be carried forward and added to or subtracted from subsequent annual determinations until the total change shall be at least $1.50, in which year an adjustment shall be made. There shall be an adjustment made of $100 in the maximum rates for each $1.50 increase or

decrease in the average weekly wage. The maximum weekly rate as so determined for the year in which the date of injury occurred shall remain fixed without further change as to the personal injury occurring within such year."

In addition, both of the above two sections are subject to the following definitions provided in MCL 418.371; MSA 17.237(371):

"Sec. 371. (1) The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. *The compensation* payable, when added to his wage earning capacity after the injury in the same or another employment, *shall not exceed his average weekly earnings at the time of such injury.*

"(2) Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning. When it is found that the established normal work week for the employee's classification of employment in the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater.

"(3) *When a hearing referee finds that the employee was employed specifically and not temporarily on a part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the*

*average number of hours worked in the part-time employment.* When it is found that the employee has worked an average of 25 hours or more per week in all of his current employments, he shall not be considered a part-time employee.

"(4) If the hourly earning of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

"(5) Where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5." (Emphasis added.)

The interplay among these three statutory provisions has been the subject of discussion in several cases, none of which, however, address the specific issue before the Court in the case at bar. In *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 260 (1973), the Court ruled that § 351 minimum compensation rates are adjustable in accordance with the terms of § 355, the result of which was to permit an award in excess of the maximum compensation amount provided in § 351.

Section 351 defines both maximum and minimum compensation rates, both of which are expressly made subject to the provisions of § 355. Section 355 directs that adjustments shall be made to coincide with increases or decreases in the average weekly wage in the covered employment as determined by the Employment Security Commission; however, § 355 makes specific reference to

the adjustment of the "maximum weekly rate in each dependency classification" only and makes no reference whatever to the adjustment of § 351's "minimum" compensation rates.

The *Jolliff* panel resolved the ostensible conflict by construing the statute in line with its " 'humanitarian objectives and beneficent purposes' ". 49 Mich App 4. Accordingly, the Court read into § 355 the authority to adjust both the maximum and minimum compensation rates of § 351. No further explanation or rationale was offered by the Court.

Subsection (1) of § 351 was the provision under consideration in *Keyzer v Christian Rest Home,* 32 Mich App 286; 188 NW2d 672 (1971). In that case, the Court of Appeals ruled that the minimum weekly payment provided for in § 351(1) applies to both full-time and part-time employees. The Court reached its conclusion on the basis of the "plain language of the statute", *Id.,* 288; no language in the statute justified the conclusion offered by the defendant that the statutory minimum rate was limited to full-time employees only.

In so ruling, the Court recognized the possibility that its interpretation could result in an award of compensation more than the average weekly wage earned on a part-time basis contrary to the express prohibition in § 371, but dismissed the problem as one "not before us at this time". *Id,.* In dicta, the Court nevertheless advised that:

"Had the Legislature desired to effect the interpretation now placed upon the act by defendant, it could easily have done so in simple language. It is not for this Court to add language to a clear and explicit statute." *Id.*

The *Keyzer* Court failed to recognize that the effect of its statements made in dicta would be to render totally

inoperative the last clear and explicit sentence in subsection 1 of § 371. *Keyzer* has not been followed or cited in any subsequent cases.

The Michigan Supreme Court had occasion recently to comment at length regarding various subsections of § 371 in *Lahay v Hastings Lodge No 1965 BPOE*, 398 Mich 467; 247 NW2d 817 (1976). Although a concurrent employment factual situation was presented in that case, the Court offered considerable insight into the method of calculating part-time employment benefits under § 371.

In *Lahay,* plaintiff was employed part-time as a bartender and was concurrently employed on a full-time basis as an insurance claims adjustor. Plaintiff suffered an injury to his back while engaged in his part-time employment, for which he received benefits from his part-time employer, the defendant of $32.50 per week. That figure represented the product of 13 hours multiplied by $2.50 per hour, plaintiff's typical work week. Plaintiff's injury affected his ability to work in his part-time job only.

Following a hearing, the referee determined that the proper compensation was $70 but on appeal the Worker's Compensation Appeal Board reversed that determination and limited plaintiff's award to $32.50 per week. The Court of Appeals in turn reversed the Worker's Compensation Appeal Board and reinstated the referee's order 59 Mich App 145; 229 NW2d 348 (1975). And finally, the Michigan Supreme Court reversed the Court of Appeals and remanded for a recomputation of benefits as explained in more detail *infra.*

In reversing the Court of Appeals, the Supreme Court ruled that, in the concurrent employment situation, it is improper to consider a contemporaneous job in calculating whether an employee is a full-time or a part-time employee, where the employee's earning capacity in the contemporaneous job is not affected by his or her injury in another job. Thus, where the disabling injury affects only the employee's part-time job, the formula provides for a benefit that will not exceed the wage earned at the part-time job. The Court further explained that the fictional "40-hour week" formula of § 371(2) applies only

to employees who work multiple part-time jobs and sustain an injury at one which diminishes their earning capacity at their other jobs.

While the Court was not faced with the conflict between §§ 351 and 371, the Court did instruct as to the proper calculations to utilize in figuring the benefits of part-time employees and further described the legislative intent prompting the last sentence in § 371 (the limitation clause). Specifically, with respect to the proper method of calculation of benefits, the Court stated the following:

"According to subsection 3 of the statute, an employee who works less than 25 hours per week is considered a part-time employee. His average weekly wage is then established using the formula outlined in the last sentence of subsection 2 of the statute, that is, by multiplying the employee's hourly rate or earning by the number of hours customarily worked." 398 Mich 473.

"Thus, in the instant case, Lahay's actual average weekly wage was $32.50. His actual hours worked at the part-time job (the only one of 'all his current employments' *affected by the disability)* were 13. Therefore, his average weekly earnings under the statute are calculated according to the first sentence of subsection 3 to be $2.50 per hour multiplied by an average of 13 hours worked each week, or $32.50. Compensation was paid at a rate of 2/3 the statutory wage by the hearing referee. Thus, plaintiff will receive $21.67 in weekly benefits as long as his wages from the bartending job, or other part-time employment taken in lieu thereof, do not exceed $10.83 per week. If such earnings exceeded that amount, his benefits will be reduced according to the formula in subsection 1.

"If an employee's disability affected both his full-time job and his part-time job, then the last sentence of subsection 3 would apply and the average weekly wage would be calculated according to subsection 2 on a 40-hour work week basis. If both jobs are affected, *Bowles [v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956)] would not apply and the limitation in subsection

1 would be determined according to his total actual wages.

"Applying *Bowles* in this manner gives full effect both to the legislative intent that part-time employees be fairly compensated according to their loss of earning capacity, and to the legislative concern that an employee not receive a windfall from his injury." 398 Mich 480-481.

With regard to the Legislature's intent in including the limitation clause of subsection 1, the Court states:

*"The last sentence of subsection 1 of the statute illustrates the legislature's intention that an employee should not receive a windfall from his injury.* Thus, an injured employee who obtains substitute employment, albeit at reduced earning capacity, shall have his compensation reduced *pro tanto."* 398 Mich 479. (Emphasis added.)

Consistent with that intent, the Court construed subsection 2 and 3 of § 371 as it did, so as to avoid the "apparent inequity" that plaintiff "would receive more in compensation benefits than he earned in wages". *Id,* 478.

Another case decided the same day as *Lahay* is *Gasparick v H C Price Construction Co,* 398 Mich 483; 247 NW2d 824 (1976). In *Gasparick,* the Court discussed the proper method of computing the "average weekly wage" for an employee engaged in seasonal employment. One aspect of that case is relevant to the case at bar. In *Gasparick,* the Court noted that the Legislature requires:

"* * * some employers in certain instances to bear the burden of their employees' incapacitating injuries despite the fact that, at times, the compensation paid will be in excess of the amount of actual wages that would have been earned by an employee." *Id,* 490.

The Court proceeded to enumerate only two such "certain instances":

1) Where an employee's injury suffered in a part-time job affects his earning capacity in his other current employments (see *Lahay, supra,* 478-479); and

2) In the seasonal employment situation. *Gasparick, supra,* 490-491. The justification offered for the latter instance was two-fold:

1) The absence of a specific provision in the statute dealing with the computation of the wage base for an employee engaged in seasonal work, *Id.,* 491; and

2) The elimination of a "residual clause" providing for special calculation where other methods do not reasonably or fairly apply. *Id,* 488. In addition, the following note of advice and caution was offered:

"It is evident, of course, that this legislative scheme may appear to give rise to many potential inequities. However, on closer analysis, most of the problems can be eliminated by application of the limiting language of the last sentence of subsection 1 of the statute." *Gasparick v H C Price Construction Co, supra,* 491.

On the basis of these statutory provisions and in light of the several cases construing them, a part-time employee, whose disability impairs his earning capacity in the part-time employment only, is entitled to benefits in an amount calculated under § 371(3). Section 351 should logically be construed to apply only to full-time employees or those whose average weekly wage is calculated on the basis of a hypothetical 40-hour work week under § 371(2). This construction of the statute permits both the minimum rates of § 351 and the maximum payment level of § 371 to be given effect

under certain circumstances. A construction permitting the award of benefits in excess of the actual wage earned would render the clear and explicit limitation clause of § 371 inoperative and should therefore be avoided.

More specifically, the Supreme Court seems to have encouraged the construction offered above in *Lahay*. That case is factually distinguishable from the case at bar in that it deals with a concurrent employment situation; however, its policy considerations and reasoning with respect to part-time employment benefits have considerable bearing on the case at bar for several reasons. For example, the *Lahay* Court stated that the proper method of calculating benefits for a part-time employee is pursuant to § 371(3): by multiplying the hourly rate by the average number of hours worked in the part-time employment. *Lahay, supra,* 473, 480-481. It made no mention of § 351(1)'s mandatory minimum payment level.

In addition, the Court was careful to construe § 371 so as to effectuate the legislative purpose of insuring that "an employee should not receive a windfall from his injury". *Id,* 479. Thus, the Court sought to avoid the "inequitable" result of an employee receiving "more in compensation benefits than he earned in wages". *Id,* 478.

The importance which the Court assigned to effectuating the legislative intent of preventing employee windfalls was further illustrated in *Gasparick,* where the Court recognized that only in certain instances did the Legislature impose the requirement that employers bear the burden of paying in excess of the actual wages that would have been earned by an employee. *Gasparick, supra,* 490. It is submitted that no justification exists for imposing such a burden on employers of

voluntary part-time employees, as in the case at bar. The Court in *Gasparick* noted that seasonal employees were entitled to exceptional treatment, since the statute was silent with respect to calculating a wage base for employees engaged in seasonal employment. Part-time employees, on the other hand, are the subject of an explicit wage formula in the act under § 371(3). In addition, the *Gasparick* Court cautioned courts to pay special heed to the limitation clause of § 371 in its statement that: "most of the [potential inequities] can be eliminated by application of the limiting language of the last sentence of subsection 1 of the statute." *Gasparick, supra,* 491.

It should be noted that the construction of § 351 along the lines that it is applicable to full-time employees and fictional 40-hour employees only is directly at odds with the holding in *Keyzer, supra.* It is submitted, however, that *Lahay* and *Gasparick* substantially undercut the validity of the *Keyzer* rule by their construction of legislative intent; unlike the *Keyzer* panel, the *Lahay* and *Gasparick* Courts emphasized the need to effectuate the Legislature's intent against windfalls. Moreover, *Keyzer* has not been cited or followed in any case known to this writer. The viability of the *Keyzer* rule must be seriously questioned in light of *Lahay* and *Gasparick.*

Accepted principles of statutory construction support these conclusions. For example, specific provisions govern over more general ones. See 73 Am Jur 2d, Statutes, § 257, p 427 and cases thereunder. Moreover, additional words of qualification needed to harmonize a general (§ 351) and specific provision (§ 371) in the same statute should be added to the general provision (does not apply to part-time employees) rather than to the specific

one. *Brady v Detroit*, 353 Mich 243; 91 NW2d 257 (1958). Also, where an absurd result is reached by a literal construction of a statute, an exception or qualification is presumed to have been intended. *Scholten v Rhoades*, 67 Mich App 736, 745; 242 NW2d 509 (1976). Since a construction of § 351 permitting an award in excess of the actual wage earned in part-time employment would nullify the force of § 371's limitation clause, that construction should be rejected. And finally, the various provisions of a single act should be read so that all may, if possible, have effect without repugnancy or inconsistency, so as to render the statute a consistent and harmonious whole. *Remus v Grand Rapids*, 274 Mich 577; 265 NW 755 (1936).

In his treatise on worker's compensation law, Professor Larson devotes considerable attention to the treatment of compensation benefits to injured part-time employees in various jurisdictions. He cites the case of *Derion v Gilford Mfg Co*, 282 App Div 788; 122 NYS2d 444 (1953), where a part-time machine cleaner, who regularly earned $10.03 per week was awarded $25.72 per week in benefits by the New York Compensation Board. The court reversed the award on the grounds that the formula used by the board in arriving at $25.72 per week was not applicable in the circumstances. Professor Larson commented with respect to the *Derion* holding as follows:

"It might be thought that this type of result is so logical as to be immune to controversy. However, a contrary holding has been reached in a surprising number of cases." 2 Larson, The Law of Workmen's Compensation, § 60.21, p 10-386.

A part-time employee is not entitled to an award of benefits under § 351 and 355 of the Worker's

Disability Compensation Act in an amount in excess of the employee's average weekly wage in light of the express prohibition against such an award in § 371. The benefits awarded a part-time employee whose injury affects only his part-time employment are to be calculated under § 371(3) and § 351 according to *Lahay*. While that amount is substantially less than the minimum rate of § 351, the minimum-rate language of § 351 should be read to apply to full-time employees or fictional 40-hour employees only. Otherwise, the § 371 limitation clause would be of no effect under any circumstances.

Reversed and remanded for entry of an order in conformance with this opinion.

M. F. CAVANAGH, P.J., concurred.

M. J. KELLY, J. *(dissenting)*. This controversy was submitted to the Bureau on briefs and exhibits. No testimony was taken. There is no transcript to review. Apparently the parties want an appellate court opinion which silences the sniping at *Keyzer v Christian Rest Home,* 32 Mich App 286; 188 NW2d 672 (1971), *lv den* 385 Mich 758 (1971), caused or contributed to by *Lahay v Hastings Lodge No 1965 BPOE,* 398 Mich 467; 247 NW2d 817 (1976).

Judge DEWITT's able opinion correctly notes that the *Keyzer* Court based its holding on the "plain language of the statute". The Worker's Disability Compensation Act is about as plain as the Internal Revenue Code. It has been rewritten, codified, consolidated, amended, supplemented, revised, interpreted and abused times without number. We who struggle with its ramifications are left to ponder the legislative intent of an act at once in derogation of the common law and hence to be

"strictly construed"[1] and at the same time declarative of an humanitarian policy to be remedial[2] legislation and hence construed with great liberality.

The majority has noted that *Keyzer* dicta to the effect that a part-time worker could be entitled to weekly benefits in excess of his weekly wage would emasculate the last sentence of § 371(1):

"The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury."

But the majority's conclusion that "*Keyzer* has not been followed or cited" is misleading. The probability is that *Keyzer* has been and is being followed. The referee (administrative law judge) in this case followed it. The Appeal Board followed it and specifically cited it. I would conclude that *Keyzer* has been followed by the worker's compensation bench and bar. No competent claimant's counsel would overlook its advantages. The majority's conclusion that it has not been cited only means Shepard's Michigan Citations records no citations. WCAB reports are not carried by Shepards. No citation means exactly the converse of the majority's implication.

I respect the observation that the *Lahay* holding casts some doubt on *Keyzer*. But I would reconcile the two. Lahay's disability was for his part-time work only. His capacity to work at his full-time position as an insurance adjuster was not im-

---

[1] *Andrejwski v Wolverine Coal Co*, 182 Mich 298; 148 NW 684 (1914).

[2] "The statute is a remedial one, enacted primarily for the benefit of the man who works in the pursuits subject to its provisions." *Grand Rapids v Crocker*, 219 Mich 178, 189; 189 NW 221 (1922).

paired. Had he suffered total disability I think the result would have been different. At least it should have been different. The key is capacity. On this record we have to decide the weekly benefits due the plaintiff-appellee for total disability. His incapacity for any work entitled him to minimum compensation benefits computed under §§ 351 and 355 as interpreted by *Keyzer* and *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 260 (1973), *lv den* 391 Mich 780 (1974).

If there is a latent defect in our approach to the question it is the failure to address the issue of applicability of § 371(3). But the referee was not called upon to find "that the employee was employed specifically and not temporarily on a part-time basis". He obviously computed the average weekly wage by multiplying the hourly rate times 40 in accordance with the first sentence of § 371(2). In *Lahay* the referee held that the claimant's jobs totaled more than 25 hours. I am not able to predict how the Supreme Court will treat this issue. I have no hesitancy in suggesting the correct approach. The emphasis should be on earning capacity, not on hours worked or wages earned. Part-time employment may be undertaken for any number of reasons unrelated to capacity.

I would hold that where an injured worker's disability is total, as here, where we have an uncontested temporary total disability from unskilled labor, he or she is entitled to the statutory minimum. The loss of earning capacity is total. What would be the logic in limiting one who is out of the job market, suffering an employment-related injury, to a penurious fraction of minimum disability benefits merely because at the moment of injury his working time was inconsistent with his capacity? Such a result is incorrect and inhumane.

If this appears to be in conflict with the *Lahay* decision, I suggest it is not. I do not criticize *Lahay,* and am not trying to avoid it. I distinguish *Lahay* where full-time working capacity was not impaired from this case where the incapacity is total from any employment.

I would affirm.