LEIZERMAN v FIRST FLIGHT FREIGHT SERVICE

Docket No. 74551. Argued November 14, 1985 (Calendar No. 8).—
Decided December 30, 1985. Released February 18, 1986.

Sylvan Leizerman filed a petition with the Bureau of Workers'
Disability Compensation, seeking benefits for injuries received
in 1978 while employed full-time by First Flight Freight Ser-
vice during a summer recess from his job as a teacher with the
Wyandotte Public Schools. Following the injury, the plaintiff
had continued to work for the defendant for three weeks and
then had returned to his teaching job in September of that
year. The next year, the plaintiff again had worked for the
defendant during the summer recess, but, for the first time, had
continued to work full time for the defendant after he had
resumed his teaching duties until he was laid off by the
defendant in 1980. A hearing referee found that the plaintiff
was disabled as a result of lower back pain and a hernia, that
the disability continued until June 15, 1979, and that the
employments were not concurrent, and, accordingly, set off
benefits against the plaintiff's earnings from teaching. The
Workers' Compensation Appeal Board affirmed, finding that the
plaintiff did not have two simultaneous wage-earning capacities
at the time of the injuries. The Court of Appeals, D. E. HOL-
BROOK, JR., P.J., and MACKENZIE and QUINNELL, JJ., reversed,
finding that the rule restricting application of the statutory
setoff where employment is concurrent applied equally where
employment is successive (Docket No. 68345). The defendant
appeals.

In an opinion by Justice RYAN, joined by Chief Justice
WILLIAMS and Justices BRICKLEY, CAVANAGH, BOYLE, and RILEY,
the Supreme Court held:

Workers' compensation benefits for an injury suffered by a
teacher while employed at a full-time summer job should be set
off by successive unaffected earnings from regular employment
as a teacher.

1. Compensation following injury on the job is for loss of a

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Workmen's Compensation §§ 154, 357.
See the annotations in the ALR3d/4th Quick Index under Workers'
Compensation.

worker's wage-earning capacity. It is not intended that the worker be compensated for every employment opportunity lost because of the injury. Where a worker engages in simultaneous employment and an injury diminishes his wage-earning capacity with respect to one job, earnings with respect to the other job should not be used to limit compensation. However, where, as in this case, a worker engages in successive alternate employments, one ordinarily serves as a replacement for the other. Disability with respect to the first of two jobs worked successively results in no loss of wage-earning capacity with respect to the second where the worker returns to the second job. Thus earnings from the second job are to be set off against benefits resulting from the worker's diminished wage-earning capacity with regard to the first job.

2. In this case, the plaintiff's employment at the time of his injury was a summer replacement for his teaching job. An off-season job is considered a replacement for a seasonal job and is treated as successive, rather than concurrent employment. The plaintiff's earnings as a teacher are thus required to be set off against his compensation benefits.

Justice LEVIN concurred in the result only.

Reversed.

135 Mich App 385; 354 NW2d 351 (1984) reversed.

WORKERS' COMPENSATION — TEACHERS — SUMMER EMPLOYMENT.

Workers' compensation benefits for an injury suffered by a teacher while employed at a full-time summer job should be set off by successive unaffected earnings from regular employment as a teacher (MCL 418.371[1]; MSA 17.237[371][1]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Rodger G. Will*) for the plaintiff.

*Sinn, Day, Felker, Chinitz & Lovernick, P.C.* (by *Gilbert M. Chinitz*), for the defendant.

RYAN, J. The question presented is whether workers' compensation benefits attributable to an injury suffered on a summertime truck driving job should be set off by plaintiff's earnings from his unaffected, regular employment as a school-teacher, pursuant to MCL 418.371(1); MSA 17.237(371)(1). The Court of Appeals reversed a

decision of the Workers' Compensation Appeal Board that had applied the setoff.

We reverse the decision of the Court of Appeals, and reinstate the decision of the Workers' Compensation Appeal Board.

I

Plaintiff has been employed full-time as a teacher in the Wyandotte Public School system since September, 1968. Beginning in 1971, he was employed by defendant First Flight Freight Service as a truck driver during the summer months when school was in recess. In addition to driving trucks, plaintiff's duties included loading and unloading trucks, and processing and delivering freight. In August of 1978, plaintiff was injured when he attempted to open the back door of a truck. He suffered a hernia and lower back pain. He continued to work for three weeks, although with some discomfort, and stopped working for defendant around Labor Day, as was his custom. Within five days of leaving his job with the defendant, he returned to his teaching duties at the usual time, and his teaching work was essentially unaffected by his injury. At the close of the 1978-79 school year in June, plaintiff returned to his summer job with defendant. In September, however, for the first time, he continued to work full-time for defendant after he returned to his teaching duties, and worked both jobs through the autumn and winter of 1979-80 until April of 1980, at which time he was laid off by defendant.

On January 5, 1979, plaintiff filed a petition for a hearing with the Bureau of Workers' Disability Compensation. Following a hearing, the referee found that plaintiff was disabled as a result of lower back and right inguinal hernia injuries suf-

fered on August 15, 1978, and that that disability continued until June 15, 1979. He also found that plaintiff's two employments were not concurrent, and thus he reduced plaintiff's compensation pursuant to MCL 418.351, 418.361, 418.371; MSA 17.237(351), 17.237(361), 17.237(371).

Plaintiff appealed to the WCAB, which affirmed the referee's order with minor modification, specifically finding that plaintiff did not have two simultaneous wage-earning capacities at the time of the injury.

Plaintiff filed an application for leave to appeal in the Court of Appeals. The Court of Appeals granted leave to appeal and reversed the decision of the WCAB.[1] The Court applied the rule announced in *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956), and reiterated in *Lahay v Hastings Lodge,* 398 Mich 467; 247 NW2d 817 (1976), which restricted application of the § 371 setoff when an employee is working two jobs concurrently, and concluded that the rule is equally applicable to situations of successive employment and concurrent employment.

We granted leave to appeal.

## II

The statute in question provided:

> The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature

---

[1] 135 Mich App 385; 354 NW2d 351 (1984).

and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury. [MCL 418.371(1); MSA 17.237(371)(1).]

The dispute in this case centers on the last sentence of this section of the statute. At the time of his injury, and for years before, the plaintiff worked two alternate and successive seasonal jobs. After his injury, he testified that he desired to work them both concurrently, although that had not been his practice in the seven previous years. The referee and the WCAB both found that plaintiff's decision to work at the two jobs simultaneously during the year following his injury was not probative of the relationship of the two jobs to one another at the time of the injury. Relying upon the factual determination by the WCAB that plaintiff was engaged in successive employments, the Court of Appeals found that the plaintiff had two wage-earning capacities at the time of his injury. In support of that position, plaintiff cites *Sims v R D Brooks, Inc,* 389 Mich 91; 204 NW2d 139 (1973), for the proposition that it is loss of wage-earning capacity which is compensable, and not simply the loss of wages.

While it is true, as plaintiff claims, that his ability to do manual labor was unrestricted prior to his injury, and became restricted after the injury, the point is irrelevant if plaintiff would not have worked at the manual labor after school started in September when he returned to the classroom, replacing his manual labor with his job as a teacher. If plaintiff elected to replace one earning capacity with another earning capacity, his injury has caused him no loss.

The Court of Appeals, in deciding for plaintiff,

relied on a theory first articulated in *Bowles v James Lumber Co, supra,* a case in which the employee worked at two jobs concurrently. In *Bowles,* the claimant suffered an injury which disabled him from his part-time job, but not his full-time job. The Court held that since the claimant's earnings in his full-time job could not be considered in determining compensation benefits payable as a result of the disability in the part-time job only, liability should also not be decreased by taking into account what he continued to earn on that other job after the injury. The *Bowles* Court found that the equities favored the claimant.

The Court of Appeals cited *Lahay v Hastings Lodge,* and *Morris v Metals Engineering & Mfg Co,* 122 Mich App 404; 332 NW2d 495 (1983), as authority for extending *Bowles* to the case at hand. The Court stated:

> Since defendant's liability could not have been increased had the injury also disabled plaintiff as a teacher, since plaintiff's job as a teacher was not a substitute for his work as a truck driver but, rather, was an independent employment performed during his summers, beginning long before the injury, and since as the WCAB implicitly found, plaintiff had two earning capacities at the time of the injury, only one of which was affected by the disability, we reverse the WCAB's determination that MCL 418.371(1); MSA 17.237(371)(1) applies here. [135 Mich App 390.]

The plaintiff relies upon the fact that he had two, separate and independent wage-earning capacities which existed simultaneously, although he did not work at the two jobs simultaneously. He argues that he was disabled from one of them, the field of common labor, and that he should be

compensated for the loss of that earning capacity. As in *Sims v R D Brooks, Inc, supra,* where the claimant was in jail, but still allowed to collect workers' compensation benefits, plaintiff seeks to collect for his lost capacity even to drive a truck during the school year, although he did not, at that time, have any history of working as a truck-driver during the school year. He relies on his established history of working both jobs to avoid the conclusion that teaching served as a replacement job for truck driving, which would necessarily require the application of § 371. He maintains that because his return to the classroom in September, 1978, was not a *new* job, it cannot be considered to be a replacement for his summer truck driving job.

### III

Michigan workers' compensation law takes a minority position in determining the computation of benefits when a claimant is engaged in several concurrent employments. In no other state does combinability and setoff turn on the question whether the disability affects both employments. 2 Larson, Workmen's Compensation Law, § 60.31(a).[2] Thus, we approach this question as a matter unique to Michigan law.

Although no Michigan precedent is dispositive of the issue raised here, *Lahay v Hastings Lodge, supra,* and *Gasparick v H C Price Construction Co,* 398 Mich 483; 247 NW2d 824 (1976), are most pertinent. In *Lahay,* plaintiff was employed by defendant as a part-time bartender while he was simultaneously working on a full-time basis as an

---

[2] Most states combine earnings only when the multiple employments are related. Larson, *id.* Michigan expressly rejects this approach. MCL 418.371(1); MSA 17.237(371)(1).

insurance claims adjuster. He was disabled in his part-time bartending job, but his full-time position was not affected. In holding that the employee's full-time earnings could not limit his part-time benefits, the Court reaffirmed *Bowles.* However, the Court stated:

> The last sentence of subsection 1 of the statute illustrates the legislature's intention that an employee should not receive a windfall from his injury. Thus, an injured employee who obtains substitute employment, albeit at reduced earning capacity, shall have his compensation reduced *pro tanto.* The dimension added by our decision in *Bowles* is that unrelated and unaffected concurrent employment shall not be considered in calculating benefits for limitation of benefits.[3] [398 Mich 479.]

In *Gasparick,* the Court dealt with seasonal employment, stating:

> As we interpreted the limiting language of subsection 1 in *Bowles v James Lumber Co,* 345 Mich 292, 295; 75 NW2d 822 (1956), the expression "same or another employment" means "the 'same' employment in which [the employee] was hurt or . . . 'another' employment which he undertook in its place." Because an off-season job can fairly be considered to be taken in place of the seasonal job, wages earned therefrom can properly be considered in calculating the wages-plus-compensation figure to be used in applying subsection 1's limiting language. Thus, during the "season," the seasonal employer will pay his injured employee full compensation based on the employee's average weekly wage as computed according to subsection 2, and reduced by earnings from substitute employment according to subsection 1. During the off-

---

[3] In *Lahay,* the Court dealt with employment that was concurrent, and only addressed successive employment in dicta.

season, the amount of compensation will be diminished by the amount of wages earned at the replacement job according to subsection 1 if earning capacity regarding that job is unaffected or only partly affected by the injury.[6]

---

[6] The "unaffected" off-season job can be considered for the purposes of the limiting language of § 1 of the statute because it is not a "concurrent employment" with the seasonal job. Consequently, the proscription of *Bowles v James Lumber Co, supra,* would not apply. [398 Mich 492.]

---

This statement in *Gasparick* must be considered to be dicta for, although the case was concerned with seasonal employment, the Court was not directly confronted with the application of § 371, since there was no replacement job involved. Although the rule of *Gasparick* is not controlling in this case, we find it persuasive. When a worker engages in successive alternate employments, ordinarily the effective relationship between those positions is that one serves as a replacement for the other. Such is the case here. The referee found that the plaintiff was employed on "an alternate full-time basis for two employers." The WCAB found that the two employments were not simultaneous. The Court of Appeals held that plaintiff was working the two jobs in succession, and not concurrently.

Although *Lahay* and *Gasparick* upheld the continuing vitality of *Bowles,* they also placed *Bowles* solidly within the limiting framework of § 371. Thus, in *Lahay,* the Court said that *Bowles* stood for the proposition that unrelated and unaffected concurrent employment shall not be considered in calculating benefits or limitation of benefits, but that an injured employee who obtained substitute employment shall have his compensation reduced pro tanto. In *Gasparick,* the Court found *Bowles* not to be directly applicable to seasonal jobs. An off-season job is considered a replacement for the

seasonal job, and thus is treated differently than concurrent employment.

The logic behind this difference in treatment is clear. An employee who is disabled from one of two jobs he had been working concurrently has suffered a real loss of earnings. An employee who is disabled from one of two jobs he was working successively has suffered no loss of earnings from the job on which he was injured when he returns to the second job according to his regular pattern of employment. The fact that he is disabled from his first job only becomes relevant when he can no longer perform the replacement job.

## IV

Plaintiff argues that he has a dual wage-earning capacity: as a teacher and as a truckdriver, and, therefore, following *Bowles, Lahay,* and *Hairston v Firestone Tire & Rubber Co,* 404 Mich 104; 273 NW2d 400 (1978), he should be compensated during the school year for the loss of his earning capacity as a truckdriver, even as he is receiving earnings as a teacher, despite the fact that he had no history of working as a truckdriver during the school year. Plaintiff relies on *Sims v R D Brooks, Inc, supra,* for the conclusion that it is loss of wage-earning capacity which is compensable, and not the actual loss of wages. While that is a correct statement of the rule of *Sims,* we find the mechanical application of the *Sims* rule to this case would distort workers' compensation law in several aspects. First, in *Sims,* the claimant was totally disabled. He had no earning capacity, so his subsequent imprisonment had no effect whatsoever on his wage-earning ability. That is not the case here: The plaintiff's injury had only a slight effect on his wage-earning capacity as a teacher. Thus,

even if we focus on wage-earning capacity to the exclusion of all other considerations, we would still have to account for plaintiff's known wage-earning capacity as a teacher after he suffered the disability.

Second, plaintiff fails to take into account the Legislature's reason for determining that wage-earning capacity, rather than actual wages earned, is the criterion by which entitlement to benefits is measured. In *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 424; 145 NW2d 40 (1966), the Court quoted *Hood v Wyandotte Oil & Vat Co,* 272 Mich 190; 261 NW 295 (1935), and *Pique v General Motors Corp,* 317 Mich 311; 26 NW2d 900 (1947), for the interpretation of the statutory term "wage-warning capacity":

> "What is meant by the term 'wage-earning capacity after the injury?' It is not limited to wages actually earned after the injury, for such a holding would encourage malingering and compensation is not a pension. On the other hand, mere capacity to earn wages, if 'nondescript' by reason of injury, affords no measure unless accompanied by opportunity to obtain suitable employment. Opportunity is circumscribed by capacity of the injured and openings to such a wage earner."

Under this longstanding interpretation, loss of "wage-earning capacity" as the operative criterion for determining entitlement to benefits, serves the dual purpose of discouraging malingering and not penalizing the worker for his ability to do a job which is not available. The use of "wage-earning capacity" is not intended to compensate the worker for every employment opportunity that is lost due to injury. Michigan law does not award damages for industrial injuries and consequent disability allowance, but only compensates for lost

wages. *Pulley,* 378 Mich 423. If a worker suffers no economic loss, no compensation is paid. Plaintiff must show that his loss of earning capacity as a truckdriver merits compensation in light of his history of alternate employment as a teacher.

Plaintiff maintains that his two employments should be treated as concurrent, as in *Bowles, Lahay,* and *Hairston,* due to his established history of working the two jobs. This would constitute an interpretation of "concurrent" in this case that was not within the contemplation of the cited cases and is factually distinguishable. In all of those cases, the injured employee was working two jobs at the same time. In the present case, prior to his injury, plaintiff never worked both jobs at the same time; he worked both jobs in the same year, but during alternate and successive periods.

We decline to give plaintiff's employment pattern the same treatment as concurrent employment in two jobs. We believe what occurred here is better characterized as successive employment. There is no objective, common-sense, or statutory reason for treating plaintiff's summer truck driving job for other than what it was at the time of the injury: a summer replacement job for his autumn, winter, and springtime duties as a schoolteacher. That being the case, § 371 requires that plaintiff's earnings as a schoolteacher be set off against his compensation benefits.

We reverse the decision of the Court of Appeals and reinstate the decision of the Workers' Compensation Appeal Board.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with RYAN, J.

LEVIN, J., concurred in the result only.